CENTURIAN DEVELOPMENT LTD., Respondent, v KENFORD COMPANY, INC. (Formerly LANCASTER SALES, INC.), Appellant.

Fourth Department, December 16, 1977

APPEARANCES OF COUNSEL

*Hodgson, Russ, Andrews, Woods & Goodyear (Victor Fuzak* of counsel), for appellant.

*Richard O. Robinson* for respondent.

## OPINION OF THE COURT

SIMONS, J.

Plaintiff brought this action to recover rent due for premises leased to defendant and for physical damage allegedly caused when defendant directed the gas company to turn off the heat, and the water pipes burst. Defendant does not contend that it paid the rent. It maintains that it is released from its obligations under the lease because it surrendered the premises at the end of May, 1975 and plaintiff accepted the surrender. The trial court, sitting without a jury, found defendant liable for $18,433.45 rent for the period from May, 1975 through January, 1976 and $2,500 compensation for the property damage resulting from the termination of heat.

The applicable legal principles are quickly stated.

■ When defendant abandoned or surrendered these premises prior to expiration of the lease, the landlord had three options: (1) it could do nothing and collect the full rent due under the lease *(Becar v Flues,* 64 NY 518; *Sancourt Realty Corp. v Dowling,* 220 App Div 660), (2) it could accept the tenant's surrender, re-enter the premises and relet them for its own account and under these circumstances the tenant would be released from further liability from rent, or (3) it could notify the tenant that it was entering and reletting the premises for the tenant's benefit. If it attempted to relet for the benefit of the tenant, the rent collected would be apportioned first to repay the landlord's expenses in re-entering and reletting and then to pay the tenant's rent obligation. Any excess would be payable to the tenant and the tenant would remain liable for any deficiency (Lease, par 16; see *Underhill v Collins,* 132 NY 269). In this case, the landlord relet larger and different premises from those leased to defendant without notice to defendant, for a new term which exceeded the tenant's original term and by an agreement which obligated extensive repairs and modifications to the premises. While the presumption that these acts of the landlord were done in hostility to the tenant's rights may be rebutted, the landlord expressly denies any agreement to relet the premises for the

benefit of the tenant. The issue on this appeal, then, is whether there was a surrender and acceptance of the lease for the landlord's own benefit, thereby terminating the tenant's liability, or whether the tenant remained liable for rent under the terms of its lease.

Defendant's predecessor, Lancaster Sales, Inc., had conducted a franchised Ford automobile dealership on the demised premises since 1956. The present lease term commenced on September 1, 1971 and was due to expire on August 31, 1976. Prior to the expiration of the lease Lancaster terminated its dealership with Ford, effective January 20, 1975, and began to liquidate its business. By the beginning of March it had sold its vehicle inventory and had discharged all but two employees. The parts inventory was returned to Ford and the remaining employees were engaged in winding up the company affairs, cleaning the premises and storing a substantial quantity of used parts, tools and furniture in what had been used as the service area of the dealership.

During this period Lancaster's officers received inquiries from representatives of Ford Motor Company about establishing another franchise in the same building and the possibility of awarding the franchise to one of defendant's former employees. Defendant's officers assured Ford that defendant would make the premises available before expiration of the lease and they referred the Ford representatives, as well as others who made inquiry, to plaintiff. Indeed, it is conceded that plaintiff brought prospective tenants to the premises on various occasions during the spring of 1975 before defendant vacated and that it requested and received a key from defendant so that it would have access for that purpose.

Lancaster completed its removal from the premises by the end of May except for the stored items which were left in the hope that they could be sold to a new Ford franchise if the property was rented to Ford. From time to time defendant reentered the premises to sell some of these and, although several items were stolen in October, some personal property remained stored there until the new tenant took over in 1976. Defendant retained a key for the purpose of access and it continued to heat the premises until November, 1975.

On June 6, 1975 plaintiff granted the first of a series of options to a representative of Ford. These options covered the premises formerly leased to defendant and also an adjoining area of the building of approximately equal size. Plaintiff

agreed to make extensive repairs to the property within 60 days if Ford exercised the option and plaintiff warranted that it had the "right to relet" the premises. The first option was for $1 and other good and valuable consideration. The second option was executed for a consideration of $5,000 for the period September 10, 1975 to November 10, 1975. If exercised before October 10, part of the consideration paid was to be applied towards rent. If the option was not exercised by October 10 the entire consideration could be kept by plaintiff. The option was not exercised and plaintiff kept the $5,000 payment. The option was renewed thereafter for additional consideration of $5,000.

On February 26, 1976 Ford notified plaintiff that it intended to rent the premises for a five-year term and the landlord started to make the required repairs. Plaintiff commenced this action to recover the rent for the months of June, 1975 through February, 1976.

When defendant executed the lease it acquired a vested interest in the demised property. The contract was not executory but complete at that time and defendant's obligation to pay rent was fixed according to the terms of the lease. If defendant is to escape the obligation to pay the full rent due under its lease, it must do so with the agreement of the landlord, that is, by the landlord's acceptance of its surrender of the premises before the expiration of the term. There would be little problem if the parties had expressed their agreement to surrender the lease but they have failed to do so and the surrender, if it exists at all, must be implied by the parties' conduct. A surrender by operation of law would be manifest if the tenant abandoned the demised premises and the landlord created another estate inconsistent with the abandoning tenant's rights under the lease (*Gray v Kaufman Dairy & Ice Cream Co.,* 162 NY 388). It also may be implied, however, by conduct by the landlord which fell short of an actual reletting but which indicated the landlord's intent to terminate the lease and use the premises for his own benefit (*Saracena v Preisler,* 180 App Div 348; *Crane v Edwards,* 80 App Div 333; cf. *Desiderio v Chain Locations of Amer.,* 19 AD2d 634, affd 13 NY2d 1108).

We agree with what the parties and the trial court appear to have assumed without discussing, that the tenant offered to surrender the premises at the end of May despite its retention

of a key and the sporadic re-entry by its employees to sell or inspect the tools and the furniture which continued to be stored there (see *Gadek, Inc. v F. W. B. Corp.,* 26 AD2d 807). What is less clear is the intent of the landlord to accept the surrender and give up its rights to enforce the terms of the lease.

■ Defendant relies principally upon plaintiff's conduct in executing the options to Ford as proof that it accepted the tenant's surrender. Plaintiff, on the other hand, equates these options with attempts to relet and contends that the binding offers to relet contained in the written options were no more indicative of intent than any other attempt to rent (see *Levitt v Zindler,* 136 App Div 695; *Dorrance v Bonesteel,* 51 App Div 129) and that they should not result in the landlord forfeiting its right to proceed against the defaulting tenant. There are certainly strong policy reasons to support plaintiff's position, for a landlord has no obligation to mitigate damages *(Becar v Flues,* 64 NY 518, *supra;* 2 Rasch, Landlord and Tenant [2d ed], § 875) and it is in the best interests of both parties that the landlord be encouraged to attempt to relet without prejudicing its position against its tenant. Plaintiff's conduct in this case, however, went well beyond mere attempts to relet. The options to Ford committed the landlord to rent defendant's premises, to make extensive renovations, they contained a warranty of plaintiff's right to possession and plaintiff received $5,000 each for the options executed in September and November, payments which plaintiff received to its own use without informing the tenant. Added to this are other facts which demonstrate plaintiff's intent to terminate the lease. Before defendant surrendered the premises in May, 1975, plaintiff was bringing prospective tenants on the premises and its officers requested and received a key from defendant. These acts continued throughout the months in question, they interfered with the tenant's possession and permitted the landlord to enjoy rights that were greater than those reserved to it under the lease. Furthermore, after defendant vacated, various temporary tenants occupied premises adjoining those leased to defendant and these tenants were given keys by the landlord which gave them access to defendant's premises. Thus, by November, 1975 plaintiff's implied acceptance of the surrender was apparent. It had physical possession of the premises and was using them for its own profit by retaining the option fee, and it was acting in a manner inconsistent

with the tenant's interest in the property and the mutual obligations of the parties contained in the lease.

The lease between the parties to this action was surrendered by operation of law as of November, 1975. Defendant owes rent to plaintiff for the months of June, July, August, September and October, 1975 in the amount of $10,250. The trial court found an additional sum of $2,033.45 due under the provisions of the lease for increased taxes. In view of our modification of the trial court's judgment, an adjustment may be required for that amount. We are unable to compute this from the record and if adjustment is required and the parties are unable to agree, an application may be made to Trial Term.

■ The trial court also awarded $2,500 for property damages caused when the frozen water pipes in the building burst in December, 1975. When defendant vacated the premises in May, 1975 it continued to heat them throughout the summer and fall because of the personal property it had stored in the building. Defendant admitted it ordered the gas company to turn off the heat in early November without notifying the landlord and it is, therefore, responsible for the damages occasioned by its conduct *(Moch Co. v Rensselaer Water Co.,* 247 NY 160; *Zibbon v Town of Cheektowaga,* 51 AD2d 448, 450, app dsmd 39 NY2d 1056).

The judgment should be modified in accordance with this opinion and, as modified, affirmed.

MARSH, P. J., HANCOCK, JR., DENMAN and WITMER, JJ., concur.

Judgment unanimously modified, on the law and facts, in accordance with opinion by SIMONS, J., and, as modified, affirmed, without costs.