*1083 OPINION OF THE COURT
Joseph Goldstein, J.
On or about April 25, 1972, plaintiff as landlord and defendants personally as tenants, entered into a written lease for store premises at 598 Central Avenue, Cedarhurst, New York. The term of said lease was for 10 years commencing May 1, 1972, and ending April 30, 1982.
Pursuant to authorization contained within the lease, defendants assigned the lease to Owen-Hadley, Inc., a corporation wholly owned by them. Thereafter, Owen-Hadley, Inc., entered into a sublease with Cheng Mow Sang and Cheng Maw Kwai. The primary lease, while permitting the afore-mentioned assignment, included a provision whereby defendants were held personally liable in the event of such assignment.
Upon abandonment of the premises by subtenants, Sang and Kwai, the plaintiff commenced a summary proceeding for nonpayment of rent to regain possession of the premises which resulted in a judgment of eviction dated February 4, 1975. On March 17, 1975, plaintiff leased the premises, along with the adjoining store (also owned by plaintiff) in one lease for a single rental to Mario Braga. Pursuant to said lease, the two stores were physically combined and rented as a single entity.
By the present action, plaintiff seeks to invoke a remedy under a term of the lease (referred to as a "survival clause”) which provides as follows:
Paragraph 18 — Remedies of Landlord and Waiver of Redemption.
"18. In case of any such default, re-entry, expiration and/or dispossess by summary proceedings or otherwise, (a) the rent shall become due thereupon and be paid up to the time of such re-entry, dispossess and/or expiration, together with such expenses as landlord may incur for legal expenses, attorneys’ fees, brokerage, and/or putting the demised premises in good order, or for preparing the same for re-rental; (b) Landlord may re-let the premises or any part or parts thereof, either in the name of Landlord or otherwise, for a term or terms, which may at Landlord’s option be less than or exceed the period which would otherwise have constituted the balance of the term of this lease and may grant concessions or free rent or charge a higher rental than that in this lease, and/or (c) Tenant or the legal representatives of Tenant shall also pay *1084 Landlord as liquidated damages for the failure of Tenant to observe and perform said Tenant’s covenants herein contained, any deficiency between the rent hereby reserved and/ or covenanted to be paid and the net amount, if any, of the rents collected on account of the lease or leases of the demised premises for each month of the period which would otherwise have constituted the balance of the term of this lease”.
Plaintiff seeks to recover from defendant, Michael Klein (the action against his codefendant, Robert Alan Loewenstein having been severed upon his being unavailable for trial due to medical reasons), a sum which represents the rents due for the period during which no rent was paid to plaintiff and, in addition, the difference between the rent collected from the new tenant and defendants’ rent obligation under their lease through April, 1976. There is no claim for periods subsequent to the afore-mentioned date.
The aforesaid liability is predicated upon plaintiff’s claim that defendants are liable pursuant to the "survival clause” of the lease. Defendant, in turn, contends that the lease ended on March 17, 1975 when plaintiff entered into a new lease with Mario Braga which provided for the physical joinder of the subject premises with the adjoining store. In particular, defendant claims that, by his conduct, plaintiff "accepted the surrender of the lease and terminated all obligations thereunder.” With this contention, however, the court cannot concur.
It is undisputed that the lease gives express permission to relet the premises and, in addition, by the inclusion of the "survival clause,” the plaintiff intended to hold defendants liable for rents due for the terms of the lease after its termination by summary proceedings or otherwise. The dispute herein concerns the legal effect, if any, of the landlord’s conduct in reletting and combining the premises with the adjacent property.
In the court’s view, the reletting of the subject premises is not a defense to a claim under the "survival clause” (Bedford Myrtle Corp. v Martin, 28 Misc 2d 33) when such reletting occurs subsequent to eviction by a summary proceeding. In addition, when the landlord combined the premises with another it acted, pursuant to express authority granted by the lease (paragraph 18) to "make such alterations * * * as * * * in landlord’s sole judgment [are] necessary for the purpose of reletting”. The afore-mentioned lease provision, it should be noted, also provides that making such alterations or repairs *1085 "shall not operate * * * to release tenant from liability * * * as aforesaid” ("survival clause”). Simply stated, the landlord’s acts are not inconsistent with his claim, nor from the evidence adduced at trial was there any bad faith involved in the transaction. Quite the contrary, landlord acted in every respect to minimize defendants’ financial obligations pursuant to the terms of the lease.
In so holding, the court notes that under our law when the premises have been abandoned, if a landlord relets he may not exceed the limits of his authority to do so in the lease (Rasch, New York Landlord & Tenant, Summary Proceedings [2d ed], § 878; Centurian Dev. v Ken ford Co., 60 AD2d 96). Defendant urges, citing Friedlander v Citron (129 NYS 427), that it has been held that if a landlord relets the premises together with other premises for a gross rent it may be presumed that he exceeded the limits of the authority to relet and will be deemed to have accepted the surrender of the lease and terminated all liability thereunder. However, the above-mentioned case, and the principles from which it flows (see Rasch, New York Landlord & Tenant, Summary Proceedings [2d ed], § 878) are not applicable to the present circumstances since here the reletting occurred subsequent to the summary proceeding by which the tenants’ occupancy was terminated. As long as the lease remains alive, the landlord, in reletting, acts as agent for the tenant unless it can be shown the landlord exceeded the terms at the authority to relet. In such case, a question arises as to whether the landlord "accepted surrender of the lease”. Where, as here, the occupancy was terminated prior to the reletting, there is no basis for the claim that surrender of the premises and lease were accepted. Suffice it to say, however, that the evidence adduced at trial clearly indicates that the landlord was acting pursuant to the terms of the lease, and it is the finding of this court that the landlord did not exceed the authorization given to him by the clear import of the lease agreement. To the contrary, all the acts of the landlord are consistent with an intention to hold defendant liable for "damages” (Rasch, New York Landlord & Tenant, Summary Proceedings [2d ed], § 795) under the survival clause and not rent under the lease.
The parties on trial have agreed that if the plaintiff were to succeed herein, plaintiff should have judgment in the amount of $5,534.08. Defendant urges that said sum should be reduced by the amount of the security deposited with the landlord.
*1086 On the question of security it would initially appear that additional parties should be before the court in order to determine the rightful owner of the security deposit. Therefore, the landlord shall continue to hold same secure for this tenant, or any other tenants who may assert their claim in the future. Defendant’s claim for return of the sum held as security is denied without prejudice to a renewal thereof as tenant may be so advised.
Judgment for plaintiff is in the amount of $5,534.08.