OPINION OF THE COURT
William Ritholtz, J.
Plaintiff, the absentee owner of a one-family dwelling in North Woodmere, New York, brings this action against defendant tenants pursuant to the terms of a lease dated April 1, 1982. The lease term was for a four-year period commencing May 1, 1982 and terminating April 30, 1986. The monthly rent was $1,200, against which defendants deposited the sum of $3,000 as security.
During the course of their occupancy, defendants installed certain built-in furniture items, the value of which they allege is approximately $14,800. Defendants then removed from the premises in March 1984, prior to the expiration of the lease. No further rent was paid for the months of March, April, May, June and July 1984. Plaintiff rerented the premises for a term commencing August 1, 1984 and terminating August 31, 1985. The successor tenant was also granted an option, which he subsequently exercised, to renew his lease for an additional *154 year, through August 31, 1986. The successor tenant willingly received the premises with all of the built-in furniture installations, plaintiff having made no adjustments to defendant’s work.
The lease with the successor tenant provided for a monthly rental of $1,450 for the first year, plus $100 per month for gardener’s service. On the exercise of the option for renewal, the successor tenant was required to pay $1,595 monthly, plus $100 each month for gardener’s services. Defendant’s lease for $1,200 per month required them to pay independently for their own gardening.
In September 1984, subsequent to the rental of the premises to the successor tenant, plaintiff commenced this suit alleging two causes of action. In the first cause of action, plaintiff seeks rent payments from defendant in the sum of $6,000 for the months of March, April, May, June and July 1984. In the second cause of action, plaintiff seeks $15,000 alleging that defendants breached their lease and were negligent in making structural changes to the premises without the consent or knowledge of plaintiff.
The defendant Stanley Goldstein interposed an answer, which included an affirmative defense and two counterclaims. The affirmative defense alleged that plaintiff sustained no damages assessable against defendant Goldstein on the grounds that the amount reserved and received under the replacement lease during the unexpired term of defendants’ original lease exceeded the rent which would have been payable under the original lease. In the first counterclaim, the defendant seeks the return of defendants’ security deposit with plaintiff on the grounds that pursuant to the terms of the lease, plaintiff is not entitled to retain same. In the second counterclaim, the defendant alleges the installation of substantial improvements increasing the value of plaintiff’s property which plaintiff has used as a basis for increasing the rental income from said property, and defendant alleges that, as a consequence thereof, the plaintiff has been unjustly enriched in the sum of $20,658.
RENT DUE UNDER ORIGINAL LEASE AND EXCESS RENT FROM SUCCESSOR TENANT
The general question at bar is whether the landlord or the defaulting tenants receive the rent, in excess of that due under the original lease, that the landlord collects from a *155 subsequent tenant for the unexpired term of the original lease. The underlying and more specific issue is whether the excess rent is to be applied retroactively and thus, as a full credit against the rent owed by the defaulting tenants for the period the property was vacant. In this case, it is clear that defendants are responsible for $6,000 in lost rent as a result of the five-month vacancy subsequent to their abandoning the premises. There is no dispute that plaintiff acted to mitigate her damages by finding a successor tenant. Defendants now seek to benefit from their breach, based upon the landlord’s successful mitigation of her damages which, incidently, is a duty not clearly established in law (see, Becar v Flues, 64 NY 518; Centurian Dev. v Kenford Co., 60 AD2d 96; 2 Rasch, New York Landlord & Tenant, Summary Proceedings § 875 [2d ed] [supporting established rule that landlord has no duty to mitigate damages]; but see, Paragon Indus. v Williams, 122 Misc 2d 628 [indicating recent trend to the contrary]).
One of the options available to the landlord upon the tenants’ abandonment was to accept the tenants’ surrender, reenter the premises and relet them for her own account. Under these circumstances the tenants would be released from further liability for rent (Centurian Dev. v Kenford Co., supra). Similarly, any obligation of the landlord to the tenants would cease to exist, as the landlord-tenant relationship is effectively terminated by rerenting the premises. A landlord, under such circumstances, is not required to relet the premises for the protection of the abandoning tenants (Whitcomb v Brant, 90 NJL 245, 100 A 175), since "no landlord could expect that the excess rent he received from a subsequent tenant would accrue to the benefit of the breaching tenant”. (New Jersey Indus. Props. v Y.C. & V.L., 100 NJ 432, —, 495 A2d 1320, 1326.) "While few courts have addressed this issue, most courts that have considered it * * * have held that the defaulting tenant was not entitled to credit the excess rent the landlord received from a subsequent tenant towards the unpaid rent owed by the original tenant for the period of time the property was vacant. See 49 Am. Jur. 2d, Landlord and Tenant, § 623, p. 597 * * * Restatement (Second) of Real Property, § 12.1, Reporter’s Note to § 12.1 (1977)” (New Jersey Indus. Props. v Y.C. & V.L., 100 NJ, at p —, 495 A2d, at p 1326, supra.)
This rule comports with the principles of basic fairness and the reasonable expectations of the parties (New Jersey Indus. Props. v Y.C. & Y.L., supra). To hold otherwise, namely, that a *156 party can maintain a claim for a wrong where he has consented to the act which occasioned his loss, would be repugnant to such notions of fairness.
Therefore, this court holds that plaintiff has sustained his first cause of action for $6,000. Defendants’ affirmative defense is dismissed accordingly.
DAMAGES DUE TO STRUCTURAL ALTERATIONS
Plaintiffs second cause of action seeks damages for built-in furniture installed without her consent. Paragraph 36 of the addendum to the lease for the subject premises states that "[tjenant may not paint, paper, or decorate premises or make other alterations without the prior consent of the landlord.” Such consent was never sought nor was it ever granted in this case. Defendants, in addition, in failing to secure consent, contravened RPAPL 803. Subdivision (1) (e) of that law requires 30 days’ notice to the owner prior to commencing the alterations.
Plaintiff, in addition, alleges that defendants made impermissible structural alterations. A tenant is at liberty to make only nonstructural alterations for legitimate business purposes provided the alterations are removed within the lease term and do not cause serious or permanent damage to the realty. (1 Rasch, New York Landlord & Tenant, Summary Proceedings § 455 [2d ed], citing Andrews v Day Button Co., 132 NY 348; Rumiche Corp. v Eisenreich, 40 NY2d 174.) A primary factor is the ready removability of the tenant’s installations (Rumiche Corp. v Eisenreich, supra). In this case, not only did the installations remain subsequent to defendants’ abandonment, but their removal would have required considerable expense. Although plaintiff alleges that the cost of removal plus ancillary repairs would exceed $18,000, the court accepts the more credible testimony of defendants’ witness, a tradesman who did the installations, that such cost would be about $1,500.
It has been stated that the measure of damages without variation is what it would cost to put the premises in the required state of repair (Farrell Lines v City of New York, 30 NY2d 76; Mudge v West End Brewing Co., 145 App Div 28), regardless of whether or not the landlord had actually expended money in making such repairs (Niles v Iroquois Realty *157 Co., 130 App Div 744). Furthermore, " '[sjince an owner of property is entitled to have it remain as it is, without material change in its structure, form, and character, an alteration which materially injures the reversion, or materially changes the nature and character of the demised premises, is waste even though the consequences may not be prejudicial to the landlord, and indeed, even though the value of the property may be enhanced by the alteration’ ” (Freehold Invs. v Richstone, 72 Misc 2d 624, 625, [citing 33 NY Jur, Landlord and Tenant, § 142], revd 42 AD2d 696, revd 34 NY2d 612). Plaintiff is, therefore, entitled to $1,500 as the reasonable cost of repair of the premises.
SECURITY DEPOSIT
The terms of the lease clearly state that "[security amount is for purposes of damage restoration and will not be applied against any rental owed, should it occur.” Although no money was expended for damage restoration, plaintiff had withdrawn the security deposit of $3,000 plus $700 accrued interest in September 1984. This money was never applied for its legitimate purpose and, thus, plaintiff was without any authority in removing this money. The court is obliged to grant judgment in favor of defendant on the first counterclaim, directing plaintiff to repay to defendant the sum of $3,700 plus interest from September 1984.
CONCLUSION
Upon review of all the evidence and the applicable law, the court finds that plaintiff is entitled to judgment in the sum of $6,000 plus interest from August 1, 1984 on the first cause of action and $1,500 plus interest from August 1, 1984 on the second cause of action, for a total judgment of $7,500. The court also finds that defendant Goldstein is entitled to judgment in the sum of $3,700 plus interest from September 1, 1984 on the first counterclaim, which shall be applied against plaintiff’s recovery as an offset. Defendants’ second counterclaim having no merit, plaintiff is, accordingly, entitled to enter judgment as stated above.