DENNIS P. WALKER, APPELLANT AND CROSS-APPELLEE, V. WALKER ENTERPRISES, INC., A NEBRASKA CORPORATION, ET AL., APPELLEES AND CROSS-APPELLANTS

532 N.W.2d 324

Filed June 2, 1995.   No. S-93-525.

Edward D. Hotz and Patrick M. Flood, of Betterman Katelman & Hotz, for appellant.

Frank F. Pospishil and Eric H. Lindquist, of Abrahams, Kaslow & Cassman, for appellees.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, and CONNOLLY, JJ.

WHITE, C.J.

In 1977, Dennis P. Walker incorporated Walker Enterprises, Inc. (WEI), to engage in the direct mail business; WEI sold merchandise by placing inserts in the billing statements of oil companies, banks, and department stores. Before 1987, Walker owned all of WEI's issued and outstanding common stock. During 1987, Patrick H. Mueller, Walker's nephew, and Steven R. Dean, Mueller's business associate, approached Walker about purchasing WEI. Mueller and Dean proposed to purchase WEI through a limited partnership, Diversified Direct Mail (DDM); Mueller and Dean would be the general partners, and Miller & Paine Department Store would be the limited partner.

To assist them with structuring this transaction, DDM and Miller & Paine retained Stephen Gehring as counsel. Gehring drafted a stock purchase agreement, secured promissory note, noncompetition agreement, consulting agreement, commission agreement, and escrow agreement to accomplish DDM's purchase of Walker's interest in WEI. After all of these documents had been prepared, however, Miller & Paine declined to complete the transaction.

Mueller and Dean thereafter proposed to purchase for their private ownership Walker's interest in WEI. In their offer, Mueller and Dean proposed to allocate the purchase price among several agreements, including a commission agreement. The commission agreement was substantially similar to the

commission agreement signed by Walker, Mueller, and Dean in the unexecuted transaction between DDM and Miller & Paine. The main differences were that Mueller had made handwritten changes to the commission agreement, changing the party and dates involved. None of the parties ever re-signed this amended commission agreement.

To assist him with this transaction, Walker retained Timothy O'Brien as counsel. O'Brien drafted a stock purchase agreement, consulting agreement, noncompetition agreement, and stockholder agreement. These documents, along with the commission agreement, composed the parties' agreement to enable Walker to sell 20.5 percent of his interest in WEI to Mueller and Dean each, bringing Mueller's and Dean's interests in WEI to 30.5 percent each. Walker, Mueller, and Dean signed the stock purchase agreement, consulting agreement, noncompetition agreement, and stockholder agreement on December 16, 1987; Mueller and Dean were not represented by counsel at this time.

Shortly after the parties executed these documents, negotiations were begun to revise the transaction to boost Mueller's and Dean's interests in WEI to 33.3 percent each. Walker agreed to execute a new stock purchase agreement, consulting agreement, noncompetition agreement, and stockholder agreement, without additional consideration, to meet Mueller's and Dean's requests to increase their interests in WEI to 33.3 percent each. The parties executed these replacement documents on March 8, 1988, but the documents were dated January 1, 1988; again, Mueller and Dean were not represented by counsel at this time.

After executing these documents, Walker in 1988 formed Direct Response Wholesalers, a sole proprietorship to market by direct mail health products and travel packages. Direct Response Wholesalers was succeeded by CardMember Publishing Corporation, a corporation partially owned by Walker; CardMember Publishing began operations in July 1989 to market, by direct mail and telemarketing, membership programs and related services and merchandise through solo mailings, insert mailings, and bangtail envelopes (the extra flap on a consumer's credit card remittance envelope that includes an

offer of merchandise that the customer may purchase by charging it on his or her credit card).

During 1988, Mueller and Dean informed Walker that they considered his activities in Direct Response Wholesalers to be violative of the noncompetition agreement. At that time, Mueller and Dean also sought to purchase Walker's remaining interest in WEI. To assist them with this transaction, Mueller and Dean retained Craig Fry as counsel; Walker was still represented by O'Brien. Fry drafted a stock redemption agreement and consulting agreement. Walker, Mueller, and Dean signed these documents on December 8, 1988.

On February 27, 1990, Walker filed a petition for an accounting under the amended commission agreement. Thereafter, on May 29, Mueller and Dean terminated the December 8, 1988, consulting agreement. Consequently, on June 7, 1990, Walker filed an amended petition, seeking recovery of commissions and amounts due under the December 8 consulting agreement; and on November 13, Walker filed a second amended petition. Finally, on June 21, 1991, Walker filed a third amended petition, seeking reformation of many of the parties' agreements and an accounting for any amounts due on all agreements. Mueller and Dean filed a counterclaim, seeking money damages allegedly owed by Walker under various agreements.

After a bench trial, the district court concluded, among other things, that Mueller and Dean owed Walker $11,000 under the amended commission agreement and $116,000 plus interest under the January 1, 1988, consulting agreement. The district court denied Mueller and Dean's counterclaim.

Walker filed a motion for a new trial. The district court denied Walker's motion, but awarded him an additional $3,000 under the amended commission agreement and an additional $12,000 plus interest under the January 1 consulting agreement. Walker appealed, and Mueller and Dean cross-appealed.

On appeal, Walker assigns essentially three errors. Walker contends that the district court erred in (1) failing to determine that he is entitled to a 3-percent placement fee under the amended commission agreement; (2) failing to reform all the documents executed January 1 and December 8, 1988; and (3)

concluding that he was in violation of the noncompetition agreement. Mueller and Dean contend in their cross-appeal that the district court erred in (1) determining that the amended commission agreement was valid and binding and (2) entering judgment against Mueller and Dean personally on the January 1 consulting agreement.

This case is an equity action. In an appeal of an equity action, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court, but where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Blue Tee Corp. v. CDI Contractors, Inc.*, 247 Neb. 397, 529 N.W.2d 16 (1995); *Synacek v. Omaha Cold Storage*, 247 Neb. 244, 526 N.W.2d 91 (1995); *Nebraska Irrigation, Inc. v. Koch*, 246 Neb. 856, 523 N.W.2d 676 (1994).

Walker's first assignment of error is that the district court erred in failing to determine that he is entitled to a 3-percent placement fee under part III of the amended commission agreement. The amended commission agreement provided:

~~Diversified Direct Mail~~ Walker Enterprises
Commission Agreement
for
Denny Walker
~~10/14/87~~ 11/27/87

I. $40,000 base compensation towards commission for ideas, consulting, etc.

Payments to begin ~~November 1, 1988~~ February 1, 1988. ~~Jan. 1st.~~

$1,000 per month for 40 months.

II. Product Development Fee

20% of Gross Profit on all new products that Denny Walker brings to D.D.M. that D.D.M. does not have access to.

To be paid on a quarterly basis.

III. Account Placement Fee

3% of Gross Sales on placement of all approved products and accounts.

Accounts for Walker to sell to:
1. Chase
2. Citibank
3. TWA
4. Colorado National
5. J.C. Penny's [sic]
6. Bank of America

Any additional accounts can be negotiated at a later date.

~~D.D.M. will assist in all above mentioned accounts.~~

Placement fee to be paid on a quarterly basis.

/s/ Patrick H. Mueller 10-19-87 /s/ Steven R. Dean  10-19-87
Signed in Agreement     Date     Signed in Agreement    Date

/s/ D.P. Walker          10-19-87
Signed in Agreement     Date

The district court concluded that the amended commission agreement was void for lack of definiteness. However, before we reach that issue, we first must determine whether the statute of frauds, Neb. Rev. Stat. § 36–202 (Reissue 1993), barred enforcement of the amended commission agreement.

Section 36–202 provides in relevant part: "In the following cases every agreement shall be void, unless such agreement, or some note or memorandum thereof, be in writing, and subscribed by the party to be charged therewith: (1) Every agreement that, by its terms, is not to be performed within one year from the making thereof." The amended commission agreement clearly was not to be performed within 1 year; the agreement's terms provided for payment over a 40–month period, or $3^{1}/_{3}$ years.

Furthermore, the parties to be charged, Mueller and Dean, had not signed the agreement—at least not at the requisite time and not with the requisite intent. Although Mueller and Dean had signed the agreement, they signed it on October 19, 1987; however, in the case at bar, Walker is attempting to enforce an

amended commission agreement allegedly entered into on November 27. Under Nebraska law, a signature on a contract, to satisfy the statute of frauds, must be made with the present intent to authenticate the writing. *Prigge v. Olson*, 154 Neb. 131, 47 N.W.2d 344 (1951). Furthermore, although the signature requirement of the statute of frauds may be satisfied by the parties to be bound in adopting their signatures on an old contract to authenticate a new agreement, there is no evidence in the record to establish that Mueller and Dean either adopted or intended to be bound by their prior signatures on the commission agreement to be used in the DDM transaction. See *id*. Walker's first assignment of error is therefore without merit.

Walker's second assignment of error is that the district court erred in failing to reform all the documents executed January 1 and December 8, 1988. The parties executed the following documents dated January 1: stock purchase agreement, consulting agreement, noncompetition agreement, and stockholder agreement. The parties executed the following documents dated December 8: stock redemption agreement and consulting agreement.

A court may reform an agreement when there has been either a mutual mistake or a unilateral mistake caused by fraud or inequitable conduct on the part of the party against whom reformation is sought. *Records v. Christensen*, 246 Neb. 912, 524 N.W.2d 757 (1994); *Jelsma v. Acceptance Ins. Co.*, 233 Neb. 556, 446 N.W.2d 725 (1989); *Ridenour v. Farm Bureau Ins. Co.*, 221 Neb. 353, 377 N.W.2d 101 (1985). To overcome the presumption that the agreement correctly expresses the parties' intent and to obtain reformation, the party seeking reformation must offer clear, convincing, and satisfactory evidence. *Records, supra*; *Jelsma, supra*; *Ridenour, supra*.

However, before we reach the issue of whether the district court erred in failing to reform the January 1 and December 8, 1988, agreements, we first note that a party's right to reformation of an agreement depends on whether the agreement reflects the parties' intent. See, *Records, supra*; *Jelsma, supra*; *Ridenour, supra*.

Walker claims that the agreements he entered into with Mueller and Dean on both January 1 and December 8, 1988,

do not represent the parties' intent, thereby necessitating reformation of the parties' agreements. However, Walker's contention is perplexing in light of the evidence adduced at trial, particularly Walker's own testimony. The bill of exceptions reveals the following exchange:

[Defendants' attorney:] Did you . . . [sign] this Consulting Agreement without reading it?

[Walker:] Yes.

Q. Did you sign all of the agreements [dated January 1, 1988] without reading them?

A. Yes.

. . . .

Q. Did you sign all of the agreements [dated December 8, 1988] without reading them?

A. Yes.

It is well–settled law in Nebraska that one who signs an instrument without reading it, when he or she can read and has the opportunity to do so, cannot avoid the effect of his or her signature merely because he or she was not informed of the contents of the instrument. *Five Points Bank v. White*, 231 Neb. 568, 437 N.W.2d 460 (1989); *Meek v. Gratzfeld*, 223 Neb. 306, 389 N.W.2d 300 (1986). In the case at bar, Walker was represented by counsel at the time all the January 1 and December 8, 1988, documents were signed. Consequently, because Walker failed to read the documents before signing them, he cannot now claim that he is entitled to reformation because the documents do not reflect his, or the parties', intent. Walker's second assignment of error is therefore without merit.

Walker's third assignment of error is that the district court erred in concluding that Walker was in violation of the noncompetition agreement. The noncompetition agreement provides in relevant part:

For a period of five years from the date of this Agreement, Walker agrees that he will not, directly or indirectly, as a sole proprietor, member of a partnership, officer, director, employee, agent or consultant to or as more than five percent stockholder in a corporation, other than in connection with Walker Enterprises, Inc. ("WEI") . . . (i) solicit any business of the type engaged in by [WEI] or its

affiliates (defined as the sale of merchandise and services, through solo mailings or insert solicitation or bang–tail envelopes in monthly credit card or account statements) from any clients, customers, former customers or clients, or prospects of WEI or its affiliates (defined as financial institutions, oil companies or retail stores) who were solicited directly by Walker or where Walker supervised or participated in, directly or indirectly, in whole or in part, the solicitation activities related to any such persons; or (ii) solicit any employee of WEI or its affiliates to terminate his/her employment.

As used [herein], "affiliate" shall mean any person, firm or corporation that, directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, WEI, whether such control is through stock ownership, contract or otherwise.

The district court concluded that Walker was in breach of the noncompetition agreement due to his affiliation with CardMember Publishing. We agree.

The noncompetition agreement explicitly precludes Walker from "solicit[ing] any business of the type engaged in by [WEI] or its affiliates." The noncompetition agreement defines the "type" of business engaged in by WEI as "the sale of merchandise and services, through solo mailings or insert solicitation or bang–tail envelopes in monthly credit card or account statements." Both WEI and CardMember Publishing sold merchandise. Additionally, during his testimony at trial, Walker admitted that CardMember Publishing was engaged in the type of business expressly proscribed by the noncompetition agreement:

[Plaintiff's attorney:] Does your business use any kind of mailing of any sort to go into credit card billing statements?

[Walker:] Yes.

Q. What do you use?

A. Well, when requested, we will produce an insert, a bangtail envelope for a solo mailing piece when requested.

Walker's third assignment of error is therefore without merit.

In their cross–appeal, Mueller and Dean's first assignment of

error is that the district court erred in determining that the amended commission agreement was valid and binding. The district court concluded that the amended commission agreement was valid and binding and awarded Walker $11,000 under it; thereafter, in its order denying Walker's motion for a new trial, the district court awarded Walker an additional $3,000 under the amended commission agreement. We agree with Mueller and Dean.

As discussed previously, the amended commission agreement is void for failure to satisfy the statute of frauds, § 36-202. Because Mueller and Dean, the parties against whom Walker sought to enforce the amended commission agreement, did not sign the agreement with the present intent to authenticate the writing and therefore bring it within the statute of frauds, the amended commission agreement is void. Consequently, the district court erred in awarding Walker $14,000 under the amended commission agreement.

Finally, Mueller and Dean's second assignment of error is that the district court erred in entering judgment against Mueller and Dean personally on the January 1, 1988, consulting agreement. The recital provides: "THIS CONSULTING AGREEMENT ('Agreement') [is] made this *1st* day of January, 1988, between Walker Enterprises, Inc. ('WEI') *and* Patrick H. Mueller and Steven R. Dean ('Mueller/Dean') and Dennis P. Walker ('Walker')." (Emphasis supplied.) Walker contends that the insertion of the conjunction "and" in the recital means that Mueller and Dean, in addition to WEI and himself, also are parties to this agreement. However, Mueller's and Dean's signatures appeared on the agreement as follows:

WALKER ENTERPRISES, INC.

By   /s/ Patrick H. Mueller, Pres.
      Patrick H. Mueller, President

By   /s/ Steven R. Dean, V. Pres.
      Steven R. Dean, Vice–President

/s/   Dennis P. Walker
     Dennis P. Walker

Mueller and Dean contend that they should not have been held

personally liable because they signed this agreement in their official capacities as agents of a corporation. We agree.

Generally, a corporation's officers and directors are not liable to the corporation's creditors or third persons for corporate acts or debts, simply by reason of an official relation with the corporation. *Hecker v. Ravenna Bank*, 237 Neb. 810, 468 N.W.2d 88 (1991). A corporation's officers and directors are in the same position as agents of private individuals and are not personally liable on a corporation's contract unless the corporate officers and directors purport to bind themselves, or have bound themselves, to performance of the contract. *Id.*

In the case at bar, Mueller and Dean affixed their signatures to the consulting agreement with the intent of binding WEI, not themselves; this conclusion is evidenced by the listing of the corporation's name above their names; the term "by" appearing before their signatures, which indicates that they are acting on behalf of another person or entity (in this case, WEI); and their official titles, which appear after both their signatures and their typed names. Therefore, because Mueller and Dean were merely acting in their capacities as agents of the corporation, and not in their individual capacities, they are not personally liable to Walker under the consulting agreement, and inclusion of the conjunction "and" in the recital does not make it so. As a result, the district court erred in holding them personally liable under that consulting agreement.

The judgment of the district court is affirmed in part, and in part reversed and remanded with directions to dismiss.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS TO DISMISS.