JOHN Q. BACHMAN, TRUSTEE, APPELLANT, V. EASY PARKING OF AMERICA, INC., A NEBRASKA CORPORATION, APPELLEE.

562 N.W.2d 369

Filed April 24, 1997.   No. S-95-178.

Michael D. Nelson, of Nelson Law Office, for appellant.

Scott H. Rasmussen, of Brown & Brown, P.C., for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, and GERRARD JJ., and BUCKLEY, D.J.

BUCKLEY, D.J.

This is an action for the recovery of alleged damages incurred by the appellant-lessor, John Q. Bachman, resulting from the breach of a commercial real estate lease of a surface parking lot by the appellee-lessee, Easy Parking of America, Inc. (Easy Parking).

## BACKGROUND

The facts are essentially undisputed. Bachman was at all relevant times the trustee for the owners of real estate described as the south 54 feet of Lot 1, and all of Lot 8, Block 91, City Lots, Original City of Omaha, Douglas County, Nebraska. Easy Parking is a subsidiary of Allright Parking and is a Nebraska corporation with its principal place of business in Omaha.

In March 1991, Bachman and Vincent Smith discussed the possibility of Bachman's leasing the parking lot located at 1102 Dodge Street in Omaha to Easy Parking. Smith was the president of Easy Parking and had been employed for 9 years by Easy Parking's parent company, Allright Parking. Smith's duties included the securing of leases for parking lots.

On or about March 22, 1991, Bachman offered to lease the said surface parking lot for $500 per month to Easy Parking. Easy Parking accepted the offer on or about April 1. The parties

utilized Easy Parking's standard lease form, with Bachman supplying the legal description of the property. The lease was ultimately executed on May 31.

The description of the property leased was "[t]he surface parking lot located on the south 54 feet of Lot 1 and all of Lot 8, Block 91, City [L]ots, Original City of Omaha, Douglas County, Nebraska, commonly known as 1102 Dodge." The term of the lease was from June 1, 1991, through May 31, 1996, unless earlier terminated, for a total rent of $30,000, payable in monthly payments of $500, due on the first day of each month.

Bachman did not indicate that a building was located on any portion of the property; however, a building occupied most of Lot 8. Bachman testified that Lot 8 was included because the north side of the building, which abutted Lot 1, had parking space numbers affixed to it and the gravel parking lot went right up to the north end of the building.

As soon as the lease was executed, Smith mistakenly had flyers placed upon cars in a parking lot located on Lot 7, informing the owners of their new management. Smith was informed on the next day, June 1, that Bachman did not own or have title to the parking lot located on Lot 7 but had the parking lot immediately to the north of the building on Lot 8.

Andrew Travis, Easy Parking's legal counsel, sent a letter to Bachman, antedated May 31, 1991, claiming that the lease agreement was null and void by reason of mistake and failure of mutuality. Bachman responded by letter dated June 3, 1991, stating that he was not mistaken as to the surface lot which was leased and expressing his expectation of receiving rent as per the lease agreement. Bachman sent another letter dated July 22, 1991, regarding Easy Parking's failure to pay the July 1991 rent and to otherwise comply with the terms of the lease agreement. Travis responded with a letter dated July 26, 1991, again restating Easy Parking's refusal to accept possession of the surface parking lot. Easy Parking at no time took possession of any of the property or made any payments under the lease agreement.

Bachman attempted to re-lease the property, resulting in a lease with Campbell Soup Company to commence December 1, 1992. In order to obtain this lease, Bachman had the existing building on Lot 8 torn down and had the entire area resurfaced.

This lease was for an initial rental period of 24 months, at a rate of $1,500 per month, for a total rental of $36,000. This lease was for a period of time that was within the entire term of the original lease between Bachman and Easy Parking.

Bachman filed this action prior to the lease with Campbell Soup Company. Upon the execution of the lease with Campbell Soup Company, Bachman amended his petition to reflect lost rent of $9,000 for the 18 months the surface parking lot had remained vacant at the agreed-upon rate of $500 per month. Until then, Bachman had not relieved Easy Parking of its obligation under the lease agreement. Easy Parking counterclaimed to have a rescission of the written lease agreement on the grounds of mutual mistake of fact and failure of mutuality.

The case was tried to the district court on October 27, 1993. By written order dated January 4, 1995, the district court found that both parties were mistaken as to the lease agreement for different reasons, that Bachman had no damages, and that it would be unconscionable to allow Bachman to recover. Whereupon, the court dismissed both Bachman's petition and Easy Parking's counterclaim. Bachman's motion for new trial was overruled, and this appeal followed. Easy Parking did not appeal the trial court's dismissal of its counterclaim.

We transferred the case to this court's docket pursuant to Neb. Rev. Stat. § 24-1106 (Reissue 1995), which permits us to regulate the caseloads of the Nebraska Court of Appeals and this court.

## ASSIGNMENTS OF ERROR

Bachman assigns as error the court's findings that (1) Bachman was mistaken as to the inclusion of the building as part of the leased parking area, (2) Bachman had no damages, and (3) it would be unconscionable to allow Bachman to recover damages.

## STANDARD OF REVIEW

A suit for damages arising from breach of contract presents an action at law. In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict and will not be disturbed on appeal unless clearly wrong. *Production Credit Assn. v. Eldin Haussermann Farms*, 247 Neb. 538, 529 N.W.2d 26 (1995).

## ANALYSIS

Bachman first assigns as error the trial court's finding that he was mistaken as to the inclusion of the building as part of the leased surface parking area. In order to determine if this error has merit, it is necessary to examine the contract. We have stated that we view a contract as a whole in order to construe it. *Baker's Supermarkets v. Feldman*, 243 Neb. 684, 502 N.W.2d 428 (1993); *Porter v. Smith*, 240 Neb. 928, 486 N.W.2d 846 (1992); *T.V. Transmission v. City of Lincoln*, 220 Neb. 887, 374 N.W.2d 49 (1985). Contract language is also to be accorded its plain and ordinary meaning as ordinary, average, or reasonable persons would understand it. *Daehnke v. Nebraska Dept. of Soc. Servs.*, 251 Neb. 298, 557 N.W.2d 17 (1996); *Rains v. Becton, Dickinson & Co.*, 246 Neb. 746, 523 N.W.2d 506 (1994); *Murphy v. City of Lincoln*, 245 Neb. 707, 515 N.W.2d 413 (1994).

When viewed as a whole, it is clear that the parties intended to lease a surface parking lot, not a building. This intent is evidenced by the language throughout the lease identifying the property to be leased as "the surface parking lot." The lease remains silent as to the mention of any building. Similarly, paragraph 4.1 of the lease provides that "premises are leased for use only as a commercial automobile parking facility." Further, common sense dictates that a rental price of $500 per month is not reasonable if the building were to be included as well as the surface lot.

Again, the property leased was "[t]he *surface parking lot* located on the south 54 feet of Lot 1 and all of Lot 8 . . . ." (Emphasis supplied.) There is no comma between "Lot 1" and "and all of Lot 8," which would have lent weight to the claim that the surface parking lot was located only on Lot 1 and not on Lot 8.

Bachman testified that he never intended to include the building on Lot 8 in the lease. In response to the question, "As of May 31, 1991, were there parking lots located on Lot 8 and on the — roughly the south one-half portion of Lot 1," Bachman stated:

> There was a gravel parking lot located on what I would consider the north portion of the parcel. And when I say

"the parcel," I mean the south 54 feet of Lot 1 and Lot 8. A survey was never done so I could not tell you exactly where the parking lot — gravel parking lot ended. It encompassed all of Lot — the south 54 feet of Lot 1, probably a portion of Lot 8, but we never had it surveyed as far as where the building at that time was located on Lot 8.

The record, therefore, shows that the only mistake that was made was made by Easy Parking. Smith visited the area to see the parking lot to be leased and viewed the wrong parking area, which was Lot 7 and not owned by Bachman but leased for Campbell Soup Company employees. Smith never met with Bachman at the property. He disregarded signs on Lot 7 indicating the lot was for Campbell Soup Company employees. He did not check the location of the described lot, did not check to see who owned the lot, did not know how to read a plat map, and did not have records or documents that the property he thought he was leasing was 1102 Dodge Street. Smith testified as to when he realized his mistake: "In the morning I got a call from Sam Wall from Campbell's and he wanted to know what was going on and I said, well, we leased this property from Mr. Bachman, and he said, well, no, I've got leases with Mr. Esch," whereupon, Smith stated, "I just sunk down in my chair and almost cried."

The only mistake as to what property was included in the lease was the one made by Easy Parking and is therefore a unilateral mistake. Generally, the unilateral mistake of one party does not relieve that party from its obligation under a contract absent a showing of fraud, misrepresentation, or other inequitable conduct. See, *Walker v. Walker Enter.*, 248 Neb. 120, 532 N.W.2d 324 (1995); *Jelsma v. Acceptance Ins. Co.*, 233 Neb. 556, 446 N.W.2d 725 (1989); *Jones v. Employers Mut. Cas. Co.*, 230 Neb. 549, 432 N.W.2d 535 (1988); *J.J. Schaefer Livestock Hauling v. Gretna St. Bank*, 229 Neb. 580, 428 N.W.2d 185 (1988). Here, no such showing was made. After determining that there is no mutual mistake of fact, we now consider Bachman's second and third assignments of error, both relating to damages. The proper measure of damages in a contract action is the losses sustained by reason of a breach. See

*Lone Cedar Ranches v. Jandebeur*, 246 Neb. 769, 523 N.W.2d 364 (1994).

Bachman claims as damages his loss of rent at $500 per month from the inception of the lease until he relet the property to Campbell Soup Company, a period of 18 months, for a total of $9,000.

Easy Parking asserts that Bachman failed in his duty to reasonably mitigate his damages. We have held that a landlord has a duty to relet the premises in order to mitigate damages when a tenant abandons the premises prior to the expiration of a lease. *Properties Inv. Group v. JBA, Inc.*, 242 Neb. 439, 495 N.W.2d 624 (1993); *S.N. Mart, Ltd. v. Maurices Inc.*, 234 Neb. 343, 451 N.W.2d 259 (1990).

Bachman's testimony, undisputed, was that as soon as he was notified that Easy Parking considered the lease a nullity and would not accept possession of the premises, he knew he needed to attempt to get the property re-leased. Thereupon, he had contacts with Campbell Soup Company and other individuals that had downtown property interests, although he did not formally advertise the property or place a "for rent" sign on the property. He stated that downtown property is hard to lease because there are very few users for downtown property. Eventually, he entered into negotiations with Campbell Soup Company which occurred over a 5- to 6-month period, culminating in the Campbell Soup Company lease executed on October 31, 1992, to begin on December 1. Clearly, Bachman's efforts to relet the property were reasonable, and therefore he met his duty to mitigate his damages.

The trial court found that "it would be unconscionable to allow plaintiff to recover having had the advantage of the Campbell Soup lease and the profits therefrom." This raises the issue as to whether Easy Parking is entitled to credit for the higher rental received by Bachman under the Campbell Soup Company lease. This issue has not heretofore been addressed by this court. Courts in other jurisdictions are divided on this question. See, *Truitt v. Evangel Temple, Inc.*, 486 A.2d 1169 (D.C. 1984); *The Way International v. Ohio Center*, 3 Ohio App. 3d 451, 445 N.E.2d 1158 (1982); *Hermitage Co. v. Levine*, 248

N.Y. 333, 162 N.E. 97 (1928); *Centurian Dev. LTD v Kenford Co.*, 60 A.D.2d 96, 400 N.Y.S.2d 263 (1977); *N.J. Ind. Properties v. Y.C. & V.L., Inc.*, 100 N.J. 432, 495 A.2d 1320 (1985); *Hargis v. Mel-Mad Corporation*, 46 Wash. App. 146, 730 P.2d 76 (1986). However, in those cases, the subsequent leases were for the same or substantially the same amount of rental space.

Here, the subsequent lease to Campbell Soup Company required Bachman to tear down the building which occupied most, if not all, of Lot 8 and to blacktop both Lot 8 and the south 54 feet of Lot 1. The resultant lease to Campbell Soup Company was for more than twice the surface parking area than the original lease with Easy Parking.

While there was no evidence as to the actual cost incurred by Bachman in tearing down the building and surfacing and resurfacing the entire property, we deem such evidence unnecessary in light of our conclusion that whatever actual cost was incurred and the substantial increase in the parking area leased readily account for the significant difference in the monthly rent between the two leases. Accordingly, the subsequent Campbell Soup Company lease is so significantly different that it does not require a determination as to whether Easy Parking should have credit for the higher rent in that lease. Therefore, Bachman is entitled to damages for the unpaid rent.

## CONCLUSION

There being only a unilateral mistake on the part of Easy Parking and not a mutual mistake by both parties, we find that Easy Parking breached the lease and that Bachman mitigated his damages by re-leasing to Campbell Soup Company and is entitled to damages for the rent due from the breach of the lease until reletting, in the sum of $9,000. The judgment of the district court is, therefore, reversed, and the cause is remanded with the direction to enter judgment accordingly.

REVERSED AND REMANDED WITH DIRECTION.