C.S.B. CO., A NEBRASKA CORPORATION, APPELLANT, V. ELEANOR JOY ISHAM AND ROBERT W. ISHAM III, COPERSONAL REPRESENTATIVES OF THE ESTATE OF ROBERT W. ISHAM, DECEASED, ET AL., APPELLEES.

541 N.W.2d 392

Filed January 5, 1996.   No. S-94-186.

Trev E. Peterson, of Knudsen, Berkheimer, Richardson & Endacott, for appellant.

Michael V. Smith, of Smith and King, P.C., for appellees.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

LANPHIER, J.

C.S.B. Co., the appellant, acquired ownership of the First National Bank of Chadron (Bank) by purchasing the stock of a holding company which owned nearly 100 percent of the Bank's stock. Robert W. Isham, Robert W. Isham III, Robert E. Connealy, and Steven Erwin, the appellees, are the sellers of the stock. The essence of this dispute is whether the terms of the contract governing the stock purchase and sale require the appellees to indemnify C.S.B. Co. for the costs and expenses arising from defending the Bank in two separate lender liability actions. After the stock purchase and sale, the Bank continued to defend a lender liability action, referred to as the G.F. Track case, that had been disclosed in the contract for the sale of the stock. The other lender liability action, the Solar Motors case, was initiated after the contract's closing date. C.S.B. Co. brought an action at law for declaratory judgment in the district court for Sheridan County and sought to recover damages arising from the defense of the G.F. Track and the Solar Motors cases which accrued after the stock purchase. The appellees counterclaimed for attorney fees paid by them after they sold their stock in defense of the G.F. Track case. Both parties moved for summary judgment. The trial court sustained appellees' motion for summary judgment and entered judgment against C.S.B. Co. on its claims and in favor of the appellees on their counterclaim. This appeal timely ensued. We affirm the judgment of the district court as to that part of the summary judgment related to the G.F. Track case and the counterclaim, but hold summary judgment was not proper as to the Solar Motors case and remand for further proceedings.

## BACKGROUND

C.S.B. Co. began negotiations for the purchase of the Bank's holding company's stock in early 1990. Clifford Young, the

president of C.S.B. Co., and Robert W. Isham, the principal owner of the holding company's stock, were the primary negotiators.

During the course of the negotiations, C.S.B. Co. undertook its "due diligence" evaluation of the Bank with the assistance of the National Bank of Commerce in Lincoln and Peat Marwick, a national firm of certified public accountants. The National Bank of Commerce examined loan files, investments, and bank operations, while Peat Marwick examined income tax statements and the Bank's accounting system.

The negotiations culminated in the execution of a 16–page contract dated June 25, 1990. The sale of the Bank was subject to the approval of the Federal Reserve bank, and the transaction was not closed until November 1, 1990. A closing statement effecting the transfer was executed on November 1.

The June 25 contract contains purchase terms and provisions relating to the management of the Bank during the interim between the execution of the contract and the closing date. The contract also contains provisions by which the sellers and C.S.B. Co. agreed to indemnify the other as to certain claims or other liabilities.

C.S.B. Co. asserts that under the terms of the parties' contract, the appellees must indemnify it for costs that the Bank incurred in defending the lender liability actions. The G.F. Track case was resolved in favor of the Bank. The Solar Motors case resulted in a $204,357 jury verdict against the Bank. The Bank appealed the Solar Motors verdict, and the Nebraska Court of Appeals reversed the judgment of the trial court and remanded with directions to dismiss. *Solar Motors v. First Nat. Bank of Chadron*, 4 Neb. App. 1, 537 N.W.2d 527 (1995). A petition for further review of the *Solar Motors* opinion was sustained by this court on October 25, 1995, and is still pending at this time.

Following the district court's judgment in favor of Solar Motors, C.S.B. Co. filed this action to recoup the attorney fees paid in the G.F. Track case; the attorney fees and expenses incurred in the defense of the Solar Motors case; the judgment awarded against the Bank in the Solar Motors case; and a declaratory judgment that the appellees are obligated, under the

terms of the contract, to pay accruing attorney fees and expenses involved in the appeal of the Solar Motors case. The appellees counterclaimed for attorney fees paid by them in defense of the G.F. Track case. Both parties moved for summary judgment. The trial court sustained appellees' motion for summary judgment and entered judgment against C.S.B. Co. on its indemnity claim and in favor of the appellees on their counterclaim. The trial court denied C.S.B. Co.'s motion for summary judgment.

C.S.B. Co. timely appealed to the Court of Appeals. We removed the case to our docket. Subsequent to the filing of the appeal, appellee Robert W. Isham died. The appeal has been revived in the name of Eleanor Joy Isham and Robert W. Isham III, copersonal representatives of the estate.

## ASSIGNMENTS OF ERROR

C.S.B. Co. asserts that the trial court erred in sustaining the appellees' motions for summary judgment and in denying its motions for summary judgment.

## STANDARD OF REVIEW

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Poppleton v. Village Realty Co.*, 248 Neb. 353, 535 N.W.2d 400 (1995); *Krohn v. Gardner*, 248 Neb. 210, 533 N.W.2d 95 (1995); *Walpus v. Milwaukee Elec. Tool Corp.*, 248 Neb. 145, 532 N.W.2d 316 (1995).

In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *SID No. 57 v. City of Elkhorn*, 248 Neb. 486, 536 N.W.2d 56 (1995); *Poppleton v. Village Realty Co., supra*; *Krohn v. Gardner, supra*.

The construction of a contract is a matter of law, in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the

determinations made by the court below. *Rains v. Becton, Dickinson & Co.*, 246 Neb. 746, 523 N.W.2d 506 (1994); *Larsen v. First Bank*, 245 Neb. 950, 515 N.W.2d 804 (1994).

## ANALYSIS

### G.F. TRACK

At the time the negotiations for the sale of the Bank began, the Bank was already in litigation regarding the G.F. Track case. G.F. Track had declared bankruptcy and the matter was pending in bankruptcy court. Paragraph 3.6 of the contract provides:

> Litigation. Attached hereto as Exhibit 3.6 is a list of all pending or threatened litigation and, except as set forth on Exhibit 3.6, there is no litigation, proceeding, or investigation pending, or, to the knowledge of the Sellers, threatened against the Company or the Bank, which might result in any material adverse change in the business or prospects or condition (financial or otherwise) of the Company or the Bank . . . .

On exhibit 3.6, the appellees disclosed that a court case titled "G & F Track Service" had been filed in the U.S. Bankruptcy Court, District of Nebraska. The name, address, and telephone number of the attorney handling the case for the Bank was listed.

During his deposition, Young testified that he had discussed the G.F. Track case with the elder Isham prior to the closing. Young stated that Isham had told him that there was a problem with G.F. Track, that the debtors were a "bunch of crooks," and that a frivolous lawsuit had been filed. However, Young also testified that he did not rely upon Isham's representations because "we had a specific paragraph put in the contract that said if it happened when you—if it happened—if you were responsible for the lawsuit, you pay for it."

The G.F. Track case was concluded in favor of the Bank, but the Bank incurred $47,853.88 in attorney fees and expenses in defending the matter. These fees and expenses were incurred after November 1, 1990, the closing date of the contract. C.S.B. Co. made demand upon the appellees to pay these expenses pursuant to paragraph 9 of the contract. Paragraph 9 provides in part:

Indemnification by Sellers. Sellers hereby covenant and agree to save harmless, defend and indemnify Buyer, its successors and assigns, from any claims, liens, encumbrances, charges, fines, penalties, costs or expenses which may arise against Buyer or be sustained by Buyer subsequent to the Closing Date which claims, liens, encumbrances, charges, fines, penalties, costs or expenses arise out of or as a consequence of the business conducted by Sellers prior to the Closing Date, or arise out of or as a consequence of any inaccuracy in or breach of any representation or warranty made by Sellers.

In their answer, the appellees asserted that they fully disclosed the existence of G.F. Track's claim against the Bank by listing the claim on the schedule of litigation, exhibit 3.6. The appellees asserted that paragraph 10 of the contract required C.S.B. Co. to defend and indemnify the appellees from any liability arising out of specifically disclosed claims or litigation. Paragraph 10 provides in part:

Indemnification by Buyer. Buyer hereby covenants and agrees to save harmless, defend and indemnify the Sellers from any claims, liens, encumbrances, charges, fines, penalties, costs or expenses which may arise against the Sellers or be sustained by the Sellers subsequent to the Date of Closing, which claims, liens, encumbrances, charges, fines, penalties, costs or expenses arise out of liabilities specifically disclosed to Buyer, or arise out of and as a consequence of the business conducted by Buyer after the Date of Closing.

In interpreting a contract, a court must first determine, as a matter of law, whether the contract is ambiguous. *Kropp v. Grand Island Pub. Sch. Dist. No. 2*, 246 Neb. 138, 517 N.W.2d 113 (1994); *Baker's Supermarkets v. Feldman*, 243 Neb. 684, 502 N.W.2d 428 (1993). A contract written in clear and unambiguous language is not subject to interpretation or construction and must be enforced according to its terms. *Label Concepts v. Westendorf Plastics*, 247 Neb. 560, 528 N.W.2d 335 (1995); *Rains v. Becton, Dickinson & Co.*, 246 Neb. 746, 523 N.W.2d 506 (1994); *Murphy v. City of Lincoln*, 245 Neb. 707, 515 N.W.2d 413 (1994).

In this case, both parties argue that the contract is clear and unambiguous, that there are no genuine issues of material fact, and that as a matter of law, summary judgment was proper in their favor. The question then is, Is the construction of the contract a question of law? See, *Rains v. Becton, Dickinson & Co.*, *supra*; *Larsen v. First Bank*, 245 Neb. 950, 515 N.W.2d 804 (1994).

C.S.B. Co. argues that the appellees did not provide complete disclosure of the G.F. Track case as required by the contract, because it was identified as a bankruptcy case on the litigation schedule rather than as a lender liability action. C.S.B. Co. asserts that this disclosure is inaccurate because there was no disclosure that the debtor had brought an affirmative claim against the Bank and that "normally" a bankruptcy case "means that the creditor will either recover none of its claim against the debtor in bankruptcy because of the discharge under 11 U.S.C. §524, or will receive the value [of] the collateral securing its claim, if any." Brief for appellant at 23. C.S.B. Co. concludes that the characterization of the G.F. Track case as a bankruptcy matter was materially misleading and subjects the appellees to the indemnity under paragraphs 3.16 and 9 of the contract. Paragraph 3.16 provides:

> Absence of Misrepresentations. No representation or warranty by Sellers in this Agreement or in any exhibit, certificate, financial statement or document furnished or to be furnished to Buyer pursuant hereto contains or will contain any untrue statement of a material fact or omits or will omit to state a material fact necessary in order to make the statements contained therein not misleading.

We disagree. The appellees disclosed the existence of the G.F. Track case by listing it on the litigation schedule attached to the contract. Whatever the appellant thinks bankruptcy "normally" means, a bankruptcy case can include or spawn a lender liability action. See, e.g., *Matter of Baudoin*, 981 F.2d 736 (5th Cir. 1993); *In re Heritage Hotel Partnership I*, 160 B.R. 374 (9th Cir. B.A.P. 1993); *Copeland v. America's Favorite Chicken Co.*, 885 F. Supp. 911 (E.D. La. 1995); *In re Lewison Bros.*, 162 B.R. 974 (Bankr. D.N.J. 1993). The G.F. Track case was disclosed, and the name and address of the

attorney handling the matter was provided. Young, the primary negotiator on behalf of C.S.B. Co., testified that he did not rely upon any verbal representations made by the appellees, but, instead, relied upon the terms of the contract and the investigations conducted by his agents.

In the closing statement which completed the contract between the parties, C.S.B. Co. acknowledged that the appellees had accorded it full access at all reasonable times to examine all of the Bank's property and records. C.S.B. Co. has made no allegations of fraud, duress, or overreaching, and the record indicates that the parties dealt with each other at "arms length." See, e.g., *Murphy v. Omaha Loan & Bldg. Ass'n*, 141 Neb. 230, 3 N.W.2d 403 (1942). The fact that the G.F. Track case was disclosed in the contract coupled with the access to the Bank's record equals adequate disclosure in an "arms length" transaction such as this. C.S.B. Co.'s alleged failure to appreciate the exact risk of the G.F. Track case disclosed to it must therefore be borne by it.

In support of their argument that they have no duty to indemnify C.S.B. Co. for any expenses arising out of the G.F. Track case, the appellees urge that the contract's indemnification provisions, paragraphs 9 and 10, must be read together. A contract must be construed as a whole, and if possible, effect must be given to every part thereof. *Rains v. Becton, Dickinson & Co., supra; Baker's Supermarkets v. Feldman*, 243 Neb. 684, 502 N.W.2d 428 (1993).

In paragraph 9, the appellees as sellers agreed "to save harmless, defend and indemnify" the buyer C.S.B. Co. from certain liabilities which might arise after the closing date as a consequence of business conducted by the appellees prior to the closing date. In paragraph 10, C.S.B. Co. agreed "to save harmless, defend and indemnify" the appellees from any costs or expenses sustained by the appellees after the closing date which arose out of any "specifically disclosed" liabilities.

If a potential liability was disclosed, paragraph 10 negates the indemnity in paragraph 9. Since the appellees specifically disclosed the G.F. Track case, the appellees are not responsible under the contract to indemnify C.S.B. Co. for the expenses of defending the Bank in that case after the closing date.

## APPELLEES' COUNTERCLAIM

In addition to the attorney fees paid by the Bank, the appellees paid $21,364.97 in attorney fees in defense of the G.F. Track case after the contract's closing date. In their counterclaim, the appellees sought reimbursement of these attorney fees pursuant to paragraph 10 of the contract.

C.S.B. Co. argues that since the appellees continued making voluntary payments to the Bank's attorneys to defend the G.F. Track case after the contract's closing date, the trial court erred in granting appellees' counterclaim. C.S.B. Co. states that " '[w]here one has voluntarily, with full knowledge of the facts, paid a disputed demand, which he claimed he did not owe, he cannot ordinarily recover it back on the ground of its invalidity.' " *Malec v. ASCAP*, 146 Neb. 358, 368, 19 N.W.2d 540, 544–45 (1945).

The record indicates that each of the appellees paid the attorney fees from November 1990 until sometime in early 1991. The amount each appellee contributed to the attorney fees was based upon his percentage of stock ownership. The record does not reveal why the appellees paid the attorney fees, and there is no evidence in the record that the payments were made with any reservation of right. At some point, two of the appellees, Robert Isham III and Erwin, discussed the fees and reviewed the contract. On March 4, 1991, Robert Isham III informed the Bank that he had determined that the Bank was liable for the expenses associated with the defense of the G.F. Track case under the contract.

*Malec* did not involve a three–cornered transaction such as the one before us. In *Malec*, the plaintiff–payor sought to recover from the payee payments it had made to the payee under a contract after a portion of the contract was declared void. The rationale is akin to estoppel. Here, the payments were made to a third–party payee on behalf of the Bank. The appellees do not seek to recover the payments from the payee. The appellees seek to recover damages from C.S.B. Co. due to its alleged breach of contract. *Malec* does not apply.

Accordingly, we affirm the judgment of the district court in favor of the appellees on their counterclaim.

## SOLAR MOTORS

We now turn to the Solar Motors case. This lender liability case arose out of a loan made by the Bank to a car dealership, Solar Motors, Inc. The case first surfaced in March 1992, 16 months after the contract's November 1, 1990, closing date. Nonetheless, the origins of this lender liability action predate the closing date.

As discussed above, in paragraph 9, the appellees agreed "to save harmless, defend and indemnify" C.S.B. Co. from liabilities such as the Solar Motors case, which might arise after the closing date as a consequence of business conducted by the appellees prior to the closing date. Since there was no disclosure of the Solar Motors case for the reason that it did not exist at the time of the closing, paragraph 10 does not apply. Therefore, if the Solar Motors case arose as a consequence of the business conducted by the appellees prior to the closing date of the contract, the appellees are liable under the contract. Alternatively, if the Solar Motor case arose as a consequence of the business conducted by C.S.B. Co. after the closing date, then the appellees are not liable under the contract.

The Bank provided floor plan and equipment financing to Solar Motors beginning in December 1988. In August 1990, the Bank called the loans. Solar Motors was aware of the pending change in Bank ownership and discussed the matter with Chuck Berryman in September 1990. After Berryman became the president of the Bank, by a letter dated November 6, he offered to continue the loans for a 6-month period, if stated requirements were followed by Solar Motors. Solar Motors did not accept or reject the offer. On April 1, 1991, the Bank wrote Solar Motors and demanded payment in full by April 22. The matter was turned over to the Bank's attorney, and the notes were paid in full on June 24.

In its lender liability suit against the Bank, Solar Motors pled five theories of recovery, including breach of contract, negligence, misrepresentation, and breach of fiduciary duty. In summary, Solar Motors alleged that the Bank had agreed to provide inventory financing and that it had relied upon the Bank's advice, encouragements, and representations. Solar Motors alleged that when the bank demanded payment in

August 1990, it breached its agreement to continue the floor plan financing established by the Bank's pattern and custom. Solar Motors prayed for $413,719 in damages.

C.S.B. Co. asserts that the appellees are liable because they, as prior management, made the decision to call Solar Motors' loans. C.S.B. Co. urges this court to examine the second amended petition in the Solar Motors case, and it asserts that the petition proves that all of the factual allegations of wrongdoing against the Bank are tied to the operation and decisions made by prior Bank management.

In response, the appellees argue that Solar Motors "spread the blame" among present and past management in the evidence it offered in support of its lender liability action. Among the Bank's alleged wrongdoings after the change of management, Solar Motors complained of the November 6 offer to extend financing only upon certain terms and stated that such offer was an example of the Bank's bad faith. Solar Motors offered testimony regarding the effect of the Bank's refusal to continue providing floor plan financing on the decline of its business and eventual termination of its Chrysler franchise, all of which occurred after the closing date.

The pleadings and depositions before us give rise to genuine issues of material fact and the ultimate inferences that may be drawn from those facts. Solar Motors' allegations of wrongdoing implicate the Bank before and after its change in management. With the record before us, we cannot determine whether as a matter of law the Solar Motors case arose solely as a consequence of the business conducted by the appellees prior to the closing date or if any actions of the Bank's new management after the closing date were contributing factors. Viewing the evidence in a light most favorable to the party against whom the judgment is granted, C.S.B. Co., we cannot say that summary judgment was proper with regard to the Solar Motors case.

## CONCLUSION

We affirm the judgment of the district court granting summary judgment in part with regard to the G.F. Track case and the counterclaim. We reverse the district court's judgment

in part with regard to the Solar Motors case and remand for further proceedings.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.