JAMES DAEHNKE, APPELLANT, V. NEBRASKA DEPARTMENT
OF SOCIAL SERVICES AND THE STATE OF NEBRASKA, APPELLEES.
557 N.W.2d 17

Filed December 13, 1996.    No. S-94-1155.

Dalton W. Tietjen, of Tietjen, Simon & Boyle, for appellant.

Don Stenberg, Attorney General, and Lisa D. Martin-Price for appellees.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

CONNOLLY, J.

We are asked to interpret a labor contract between the appellant, James Daehnke, and his employer, the appellees, Nebraska Department of Social Services (DSS) and the State of Nebraska. The issue is whether a provision in the contract that places a 30-workday time limitation on the employer for initiating disciplinary action against an employee is applicable to all disciplinary actions or only in those instances where the employee has been reassigned or suspended pending an internal investigation.

Daehnke filed a grievance with DSS, asserting that DSS took disciplinary action against him in an untimely manner as prohibited by the contract. After DSS denied his grievance, Daehnke presented his grievance to the Nebraska State Personnel Board (Board). Following an evidentiary hearing, the Board likewise denied Daehnke's grievance. Daehnke then appealed the Board's decision to the district court for Lancaster County pursuant to Neb. Rev. Stat. § 84-917 (Reissue 1994) of the Administrative Procedure Act. The district court affirmed the Board's decision, and Daehnke appeals.

We conclude that DSS was not subject to the contract's "30-workday rule" when initiating disciplinary action, because Daehnke was not reassigned or suspended pending an internal investigation. We therefore affirm.

## BACKGROUND

The facts in this case are not disputed by the parties. Daehnke is employed by DSS in a position covered by article

10 of the 1991-93 collective bargaining agreement between the Nebraska Association of Public Employees Local 61 of the American Federation of State, County and Municipal Employees (NAPE/AFSCME) and the State of Nebraska. Sections 10.1 and 10.2 of the labor contract provide as follows:

## ARTICLE 10 - DISCIPLINE OR INVESTIGATORY SUSPENSION

10.1 An employee shall be disciplined in accordance with this labor contract. Discipline will be based upon just cause and will in no case be effective until the employee has received written notice of the allegations describing in detail the issue involved, the date the alleged violation took place, the specific section or sections of the contract or work rules involved, except in emergency or critical situations where oral notice shall suffice, and has had an opportunity to present justification of their actions at a prediscipline meeting. Any disciplinary action or measure imposed upon an employee may be processed as a grievance through the grievance procedure when it is in violation of the terms of this contract. The level of discipline imposed shall be based on the nature and severity of the infraction. The Employer shall not discipline an employee without just cause, recognizing and considering progressive discipline.

10.2 When the Employer determines that an employee must be removed from a current work assignment pending the completion of an investigation by the Employer to determine if disciplinary action is warranted, the Employer may:

a. reassign the employee to another work assignment at their current rate of pay until the investigation is completed.

b. suspend the employee from work without pay until the investigation is completed.

The Employer shall have thirty work days from the date of discovery of an infraction to initiate disciplinary action except when the Employer is awaiting the results of an outside investigation. If no action is taken, disciplinary action is barred for that particular incident.

On December 3, 1992, Daehnke's supervisor received a client complaint regarding alleged behavior of Daehnke. On January 21, 1993, 32 workdays after DSS received the client complaint, DSS initiated disciplinary action against Daehnke through a predisciplinary letter notifying him of a meeting to discuss the client complaint. Daehnke was not reassigned to another work assignment or suspended without pay, and no outside investigation was in progress. On April 23, Daehnke received a written disciplinary warning from DSS regarding the client complaint.

After Daehnke received the disciplinary warning, he filed a grievance with DSS asserting that the agency violated § 10.2 of the labor contract by initiating disciplinary action against him more than 30 workdays after it received the client complaint. In his grievance, Daehnke sought to have "[a]ll disciplinary action stopped, all information regarding [the] incident [and] subsequent proceedings removed from [his] personnel file [and] any other relief to make [him] whole." After DSS denied his grievance, Daehnke presented his grievance to the Board. The Board, by agreement of the parties, appointed a hearing officer. Following an evidentiary hearing, the hearing officer issued a written recommendation to the Board stating:

> I find that this issue was recently resolved . . . in the District Court of Lancaster County, Nebraska, in the case of NEBRASKA DEPARTMENT OF HEALTH -VS- LORENZ, Docket 487, Page 3, wherein the court held: ". . . *the so called '30 day work rule' is applicable to investigatory suspensions only, that is, for instances where the employee has been suspended or reassigned pending the results of an in-house investigation. It does not apply to disciplinary actions where the employee has not been suspended or reassigned.*". . . [T]herefor[e] the language in question only applies to those disciplinary actions contemplated under § 10.2 of the Labor Contract. When the entire § 10 is read as a whole it then becomes clear and unambiguous that the language in question applies only to those matters covered in § 10.2 of the Labor Contract[.]

The Board voted to adopt the hearing officer's recommended decision as its official decision. Daehnke appealed the Board's

decision to the district court for Lancaster County pursuant to § 84-917(5)(a) of the Administrative Procedure Act. The district court affirmed the Board's decision, finding that the " '30 work day rule' applies only to investigatory suspensions where the employee has been suspended or reassigned." Daehnke appeals.

## ASSIGNMENTS OF ERROR

Daehnke alleges the district court erred in determining that the relevant portion of § 10.2 of the labor contract applies only in cases of investigatory suspensions when employees have been suspended or reassigned and not to all disciplinary actions contemplated by state employers.

## STANDARD OF REVIEW

The construction of a contract is a matter of law, in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determinations made by the court below. *Stephens v. Radium Petroleum Co.*, 250 Neb. 560, 550 N.W.2d 39 (1996); *Solar Motors v. First Nat. Bank of Chadron*, 249 Neb. 758, 545 N.W.2d 714 (1996).

## ANALYSIS

Article 10 of the labor contract sets forth those provisions agreed to by NAPE/AFSCME and the State of Nebraska concerning discipline and investigatory suspensions taken against state employees. Section 10.1 outlines the general provisions applicable to all disciplinary actions taken against state employees. Section 10.2 outlines the provisions applicable when an employer determines that the allegations of wrongdoing warrant the removal of the employee from his or her current work assignment pending an internal investigation to determine if disciplinary action should be taken. Section 10.2 provides an employer with two options in the event the employer chooses to remove the employee pending an investigation: "a. reassign the employee to another work assignment at their current rate of pay until the investigation is completed. b. suspend the employee from work without pay until the investigation is completed."

The disputed 30-workday rule appears in § 10.2 immediately following the investigatory reassignment and suspension provisions. The rule states: "The Employer shall have thirty work

days from the date of discovery of an infraction to initiate disciplinary action except when the Employer is awaiting the results of an outside investigation. If no action is taken, disciplinary action is barred for that particular incident."

Daehnke asserts that the district court erred in failing to find that the 30-workday rule applies to all disciplinary actions contemplated by state employers. Conversely, DSS asserts that the district court correctly determined that the 30-workday rule applies only in cases where an employee has been suspended or reassigned to a different position pending the completion of an internal investigation. The parties do not dispute that Daehnke was not reassigned or suspended.

In interpreting a contract, a court must first determine, as a matter of law, whether the contract is ambiguous. *C.S.B. Co. v. Isham*, 249 Neb. 66, 541 N.W.2d 392 (1996); *Kropp v. Grand Island Pub. Sch. Dist. No. 2*, 246 Neb. 138, 517 N.W.2d 113 (1994); *Baker's Supermarkets v. Feldman*, 243 Neb. 684, 502 N.W.2d 428 (1993). A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. *Winfield v. CIGNA Cos.*, 248 Neb. 24, 532 N.W.2d 284 (1995); *Union Ins. Co. v. Land and Sky, Inc.*, 247 Neb. 696, 529 N.W.2d 773 (1995). This determination is to be made on an objective basis, not by the subjective contentions of the parties; thus, the fact that the parties have suggested opposing meanings of the disputed instrument does not necessarily compel the conclusion that the instrument is ambiguous. *Murphy v. City of Lincoln*, 245 Neb. 707, 515 N.W.2d 413 (1994); *Baker's Supermarkets v. Feldman, supra.*

Daehnke would have us construe the 30-workday rule without looking to the rest of § 10.2 and the rest of the contract as well. However, a contract must be construed as a whole, and if possible, effect must be given to every part thereof. *C.S.B. Co. v. Isham, supra; Rains v. Becton, Dickinson & Co.*, 246 Neb. 746, 523 N.W.2d 506 (1994); *Baker's Supermarkets v. Feldman, supra.* In other words, a party may not pick and choose among the clauses of a contract, accepting only those that advantage it. *Bedrosky v. Hiner*, 230 Neb. 200, 430 N.W.2d 535 (1988);

*Fisbeck v. Scherbarth, Inc.*, 229 Neb. 453, 428 N.W.2d 141 (1988).

Upon reading the contract as a whole, we determine that it is not capable of being understood in more senses than one. See, *Bedrosky v. Hiner, supra*; *Luschen Bldg. Assn. v. Fleming Cos.*, 226 Neb. 840, 415 N.W.2d 453 (1987). As a result, we conclude as a matter of law that the contract is not ambiguous.

A contract written in clear and unambiguous language is not subject to interpretation or construction and must be enforced according to its terms. *C.S.B. Co. v. Isham, supra*; *Lee Sapp Leasing v. Catholic Archbishop of Omaha*, 248 Neb. 829, 540 N.W.2d 101 (1995). The terms of a contract are to be accorded their plain and ordinary meaning as ordinary, average, or reasonable persons would understand them. *Rains v. Becton, Dickinson & Co., supra*; *Murphy v. City of Lincoln, supra.*

Giving the terms of the contract their plain and ordinary meaning, it is clear that the 30-workday rule was designed to prevent the employer from creating lengthy delays in taking disciplinary action while an employee is suspended without pay or reassigned to another work assignment pending an internal investigation. However, this concern is not present absent suspension or reassignment.

Thus, we determine that the 30-workday rule clearly and unambiguously modifies only the contract provisions relating to investigatory reassignments and suspensions and does not pertain to the initiation of discipline in general. As a result, we conclude that the manner in which DSS took disciplinary action against Daehnke was not subject to the 30-workday rule.

Finally, Daehnke argues in his brief that certain evidence submitted at the Board hearing concerning the intended applicability of the 30-workday rule violated the parol evidence rule. However, Daehnke did not state this argument as an assigned error in his brief. Errors which are argued but not assigned will not be considered by an appellate court. *Pantano v. McGowan*, 247 Neb. 894, 530 N.W.2d 912 (1995); *Wolf v. Walt*, 247 Neb. 858, 530 N.W.2d 890 (1995). As a result, we do not address this argument.

## CONCLUSION

We conclude that DSS was not subject to the contract's 30-workday rule when initiating disciplinary action, because Daehnke was not reassigned or suspended pending an internal investigation. We therefore affirm.

AFFIRMED.