McDONALD'S CORPORATION, A DELAWARE CORPORATION, APPELLEE, V. BERNIE R. GOLER AND BONNIE A. GOLER, HUSBAND AND WIFE, AND BEN WIXEN AND FRANCINE A. WIXEN, COTRUSTEES OF THE B & F WIXEN FAMILY TRUST U/A DATED AUGUST 27, 1980, APPELLANTS.

560 N.W.2d 458

Filed March 7, 1997.    No. S-95-600.

Shannon R. Harner, of Hoppe & Harner Law Offices, for appellants.

David C. Mussman, of Erickson & Sederstrom, P.C., for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, and GERRARD, JJ., and COADY, D.J.

WRIGHT, J.

McDonald's Corporation (McDonald's) commenced this declaratory judgment action seeking interpretation of a commercial lease between McDonald's and the B & F Wixen Family Trust, which does business as Golwix Properties (Golwix). Golwix appeals from a summary judgment entered by the district court in favor of McDonald's.

## SCOPE OF REVIEW

The construction of a contract is a matter of law, in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determinations made by the court below. *Daehnke v. Nebraska Dept. of Soc. Servs., ante* p. 298, 557 N.W.2d 17 (1996); *Stephens v. Radium Petroleum Co.*, 250 Neb. 560, 550 N.W.2d 39 (1996).

## FACTS

Golwix owns property located at 48th and Van Dorn Streets in Lincoln, Nebraska, known as Van Dorn Plaza. On October 19, 1981, Golwix and McDonald's signed a ground lease, ground lease addendum, and tax addendum regarding Van Dorn Plaza. McDonald's has occupied the premises from the time that construction of its building was completed until the present.

Under the terms of the lease, McDonald's is responsible for a prorated monthly share of taxes, insurance, and maintenance expenses associated with its property. The lease also requires that McDonald's pay a certain share of expenses related to the common area of Van Dorn Plaza, as articulated in article 8 of the ground lease addendum. Article 8 provides in part:

> ARTICLE 8, COMMON AREA MAINTENANCE COSTS: Tenants shall pay to landlord in the manner provided tenant's pro-rata share as defined below under common area maintenance costs as such terms are defined as follows:

A. Maintenance Costs - All costs and expense of any kind and nature paid or incurred by landlord during the lease term, in conjunction with the common area, including appropriate reserves, and operating, managing, equipping, if and to the extent provided by landlord, protecting, insuring, lighting, repairing, replacing, and maintaining the common areas on the landlord's tract. ~~which have been submitted to and approved by Lessee in advance.~~ Such costs and expense shall include but not be limited to cleaning, removal of rubbage and other refuse, line painting, fire protection, exterior common areas, illumination and maintenance of signs, located on the common area tract, snow and ice clearance, cost and expense of planting, maintaining, replanting, and replacing flowers and other landscaping, water and sewer charges, if not included under utilities of Article 3 of the Addendum, premium for liability, property damage, fire, extended coverage, malicious mischief, vandalism, workmen's compensation, employees' liability and other insurance wages, unemployment taxes, social security taxes, required licenses and permits, costs and expenses of supplies, reasonable depreciation and rents paid for the leasing and equipment used in the operation of common areas, and an administrative cost equal to 15% of the total cost of operating and maintaining the common areas, except appropriate reserves, but costs of equipment, property chargeable to capital accounts, depreciation of the original costs of constructing the common area shall be excluded.

If in accordance with the terms of any agreement or agreements heretofore or hereafter entered into between landlord and other owners of any parcels of real estate and/or adjacent to the shopping center, all or portions of the common area in or adjacent to the shopping center are kept, maintained, and operated by a common contractor. The common area maintenance costs shall include any portion of the costs and expenses including fees of such contractors shall be allocated to landlord in accordance with such agreement, however, if said outside contractor is hired to do said work, then landlord shall not be entitled to

assess charges for employee's liability, social security, workman's compensation. ~~and is not entitled to charge an administrative cost for itself.~~

The petition filed by McDonald's alleged that Golwix had attempted to charge McDonald's a pro rata share of management fees paid to Management, Inc., as well as a pro rata share of administrative costs equal to 15 percent of the total cost of operating and maintaining the common area of Van Dorn Plaza. McDonald's contended in its petition that the charges for management fees relating to the employment of Management, Inc., to manage Van Dorn Plaza were not proper and valid charges under the ground lease addendum. McDonald's requested that the court determine its rights and duties under the ground lease addendum; that

> the Defendants be barred from collecting or attempting to collect or asserting the validity of Plaintiff's pro rata share of the management fee for the services of Management, Inc.; [and] that the Court ascertain and determine any and all rights between Plaintiff and Defendants in regard to said management fees for the years 1990 to the present . . . .

In its answer, Golwix contended that the management fees paid to Management, Inc., were proper charges under the terms and conditions of the lease.

Both parties filed motions for summary judgment. The district court granted the motion of McDonald's for summary judgment, holding that Golwix had charged McDonald's for management fees which were not attributable to the management of the common area and that Golwix had charged McDonald's twice for the administrative costs of maintaining the common area by charging McDonald's 15 percent of Management, Inc.'s fee for operating the entire property. The court held that Golwix was barred from asserting the validity of Management, Inc.'s fee and from collecting or attempting to collect a pro rata share of the fee from McDonald's. The court ordered Golwix to reimburse all monies paid for fees that were improperly charged by Golwix and paid by McDonald's from 1990 to the date of the order.

Golwix appealed from the district court's grant of summary judgment to McDonald's.

## ASSIGNMENTS OF ERROR

Golwix assigns the following errors: (1) The district court erred by finding that the terms of the ground lease addendum did not allow charge-back of management expenses for the common area to the tenants under article 8; (2) the district court erred by finding that Golwix charged McDonald's twice for administrative costs of maintaining the common area by charging McDonald's 15 percent of Management, Inc.'s fee for operating and maintaining the property; and (3) the district court erred by not reaching the question of whether an industry standard exists regarding payment of management company fees as a common area maintenance expense.

## ANALYSIS

The parties agree that the contract documents at issue are not ambiguous, but each party offers a different explanation of what the documents permit with regard to maintenance costs. However, the fact that the parties have suggested opposing meanings for the disputed instrument does not necessarily compel the conclusion that the instrument is ambiguous. See *Daehnke v. Nebraska Dept. of Soc. Servs., ante* p. 298, 557 N.W.2d 17 (1996).

The dispute centers upon article 8 of the ground lease addendum, which has been set forth above. We conclude that article 8 is not ambiguous. A contract written in clear and unambiguous language is not subject to interpretation or construction and must be enforced according to its terms. *Id.*; *C.S.B. Co. v. Isham*, 249 Neb. 66, 541 N.W.2d 392 (1996). The terms of a contract are to be accorded their plain and ordinary meaning as ordinary, average, or reasonable persons would understand them. *Daehnke v. Nebraska Dept. of Soc. Servs., supra*; *Rains v. Becton, Dickinson & Co.*, 246 Neb. 746, 523 N.W.2d 506 (1994).

Article 8 requires McDonald's to pay a pro rata share of "[a]ll costs and expense of any kind and nature paid or incurred by landlord during the lease term, in conjunction with the common area, including . . . operating, managing . . . and maintaining the common areas on the landlord's tract" and "an administrative cost equal to 15% of the total cost of operating and

maintaining the common areas." Under the plain meaning of this language, McDonald's is obligated to pay a pro rata share of all costs and expenses incurred by Golwix in operating, maintaining, and managing the common area. Such costs would plainly include a pro rata share of the fee paid to Management, Inc., to the extent that the fee related to management of the common area. Moreover, this language clearly requires McDonald's to pay an additional administrative cost of 15 percent of the total cost of operating and maintaining the common area, which would include the fee paid to Management, Inc., to the extent that the fee related to the operation and management of the common area.

Article 8's use of the language "in conjunction with the common area" and similar references to the common area which appear throughout article 8 limit the fee to Management, Inc., to costs related to the common area. Golwix may not charge McDonald's for fees it pays to Management, Inc., that are expended on matters not specifically related to the operation, management, or maintenance of the common area. Accordingly, McDonald's can be charged for a pro rata share of the $31,500 fee paid by Golwix to Management, Inc., but only for that portion of the fee that is attributable to common area operation, management, or maintenance. Similarly, Golwix may not use costs that are not specifically related to the operation, management, or maintenance of the common area as a basis for determining the amount due under the 15-percent administrative fee.

Nevertheless, Golwix contends that a latent ambiguity exists in article 8 and that, as a result, Golwix should be permitted to charge back to McDonald's a pro rata share of Management, Inc.'s $31,500 fee irrespective of whether the entire fee was related to the operation, management, or maintenance of the common area. Golwix asserts that if the district court had considered extrinsic evidence of the parties' course of dealing with respect to fees permitted under article 8 and a shopping center industry standard regarding management fees, the court would have construed article 8 to obligate McDonald's to pay its share of Management, Inc.'s $31,500 fee.

We find this argument to be without merit. Regardless of whatever the industry standard might be, article 8 is plain and

unambiguous. It authorizes Golwix to bill McDonald's only for costs and expenses related to the common area. Extrinsic evidence is not permitted to explain the terms of a contract that is not ambiguous. See *Schrempp and Salerno v. Gross*, 247 Neb. 685, 529 N.W.2d 764 (1995). Article 8 is clear and unambiguous, is not subject to interpretation or construction, and must be enforced according to its terms. See, *Daehnke v. Nebraska Dept. of Soc. Servs., ante* p. 298, 557 N.W.2d 17 (1996); *C.S.B. Co. v. Isham*, 249 Neb. 66, 541 N.W.2d 392 (1996).

The parties agree that some of the duties carried out by Management, Inc., in exchange for its fee were not performed in conjunction with the common area, while others were so related. Therefore, we conclude that a factual issue remains as to the appropriate amount of the $31,500 management fee that is attributable to the costs of operating, managing, and maintaining the common area of Van Dorn Plaza.

For the reasons set forth herein, the judgment of the district court is reversed, and the cause is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.