IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


RASMUSSEN V. NELSON


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


DAVID J. RASMUSSEN AND CHRISTINA D. RASMUSSEN, HUSBAND AND WIFE, APPELLEES,

V.

KENNETH J. NELSON AND PATRICIA E. NELSON, HUSBAND AND WIFE,
AND DOUGLAS J. NELSON, A SINGLE PERSON, APPELLANTS.


Filed March 29, 2016.    No. A-15-146.


Appeal from the District Court for Platte County: ROBERT R. STEINKE, Judge. Affirmed.

Jacqueline M. Tessendorf, of Tessendorf & Tessendorf, P.C., for appellants.

James G. Egley, of Egley, Fullner, Montag & Hockabout, for appellees.


INBODY, PIRTLE, and RIEDMANN, Judges.

RIEDMANN, Judge.

### INTRODUCTION

This case involves a dispute over the boundary between the land owned by David J. Rasmussen and Christina D. Rasmussen (the Rasmussens) and that owned by Kenneth J. Nelson and Patricia E. Nelson. After trial, Patricia died and Kenneth was substituted as her personal representative. The district court for Platte County, Nebraska, ascertained the boundary in favor of the Rasmussens. Kenneth, as an individual and as the personal representative of the estate of Patricia, appeals from that order. Following a de novo review of the record, we affirm the judgment of the trial court.

BACKGROUND

In the mid-1990s David, along with his father and brother, began leasing and farming the southwest quarter of Section 7, Township 20 North, Range 4 West of the 6th P.M. in Platte County, Nebraska (the southwest quarter of section 7). A "quarter" ordinarily contains 160 acres. However, the southwest quarter of section 7 is a "short quarter" and contains only 147.57 acres because it lies adjacent to a township line to the west. This case involves the question of whether two conveyances of the "SW 1/4" and the "NW 1/4" of this quarter collectively conveyed half of the total area of the southwest quarter of section 7, or whether they conveyed only a 68-acre parcel of land depicted in a government plat.

*Initial Sale of SW 1/4 of SW 1/4.*

At the time that the Rasmussens began leasing and farming the southwest quarter of section 7, it was owned by Douglas J. Nelson and his mother, Joy Nelson. After Joy's death, Douglas owned the entire southwest quarter of section 7.

In December 2000, David saw an advertisement by Fowlkes Realty & Auction for 40 acres of land for sale. After ascertaining that the land offered for sale in the advertisement was in fact a parcel of the land owned by Douglas that the Rasmussens were already farming, David placed an offer to buy the land. The purchase agreement lists the legal description of the land to be bought as "[t]he SW 1/4 of the SW 1/4 of Section 7, Township 20 North Range 4 West of the 6th p.m. Platte County, NE." It makes no mention of the number of acres included in the transaction.

On February 21, 2001, Douglas conveyed via warranty deed "The SW 1/4 SW 1/4 of Section 7, Township 20 North, Range 4 West of the 6th P.M. Platte County, Nebraska" to the Rasmussens. The deed makes no reference to the number of acres being sold. Neither the purchase agreement nor the deed makes any reference to any survey of the land. Following the sale, the Rasmussens submitted a real estate transfer statement to the county assessor for tax purposes which listed that 40 acres had been conveyed in the sale. The Rasmussens continued to lease and farm the remaining land of the southwest quarter of section 7 from Douglas.

*Sale of NW 1/4 of SW 1/4.*

David testified that in 2006 Dennis Fowlkes, the real estate agent, contacted him and offered "another 40" of Douglas's land in the southwest quarter of section 7 for sale. In December 2006, Douglas conveyed to the Rasmussens the northwest 1/4 of the southwest 1/4 of Section 7 by warranty deed. The deed again makes no reference to the number of acres conveyed. The written copy of the purchase agreement for the 2006 sale was lost and not available to be entered into evidence, but the deed is in evidence. There is no argument that the written description of the land in the 2006 purchase agreement differed from that on the deed. Evidence in the record reveals that the 2006 deed contains identical language to the 2001 deed and purchase agreement with the exception of substituting "NW 1/4" for "SW 1/4." Following the 2006 purchase, the Rasmussens owned the west 1/2 of the southwest quarter of section 7 and Douglas retained the east 1/2.

Although the southwest quarter of section 7 had no fence or other demarcation of the boundary between the east 1/2 and the west 1/2, David used a measuring wheel in 2001 or 2006 to find the east-west midpoint of the southwest quarter of section 7 and placed a red flag there. David

testified that Douglas observed the placement of the flag and commented that he had wondered where the center point was. Douglas did not dispute the placement of the flag.

*Improvement of Land.*

In 2008, the Rasmussens undertook approximately $20,000 of landscaping work to improve both their land and Douglas's by leveling terraces, moving a dam, and removing trees. Douglas agreed to the land improvements and gave the Rasmussens rent credit for their work on his land. Also in 2008, the Rasmussens drilled a well and installed a center pivot to irrigate all of the southwest quarter of section 7. Before the Rasmussens drilled the well, they approached Douglas about buying the northeast quarter of the southwest quarter of section 7. David testified that after conferring with his accountant, Douglas declined to sell any more of his land, but that he acquiesced to the improvements and verbally assured the Rasmussens that they would have the first opportunity to buy the land.

*Initiation of Boundary Dispute.*

In 2011, Kenneth became the attorney in fact for Douglas. That year Douglas gave the east 1/2 of the southwest quarter of section 7 to Kenneth and his wife Patricia (collectively the Nelsons), reserving a life estate for himself. The deed does not indicate the number of acres contained in the east 1/2. Douglas moved to a nursing home in October 2011.

David testified that after Douglas transferred the east 1/2 to Kenneth, he read in the Columbus paper that the transfer had consisted of 80 acres. This caused the Rasmussens to approach Kenneth about the boundary line, which devolved into a boundary dispute. While the Rasmussens believed that the parties owned equal halves of the land in terms of acreage, Kenneth maintained that his eastern 1/2 contained 80 acres and the Rasmussens' western half contained only 68. Kenneth erected a fence along the line he believed to be the boundary.

In June 2012, the Rasmussens filed this action seeking an order ascertaining the boundary line between the parties' property. The Nelsons filed a counterclaim seeking unpaid rents and that title be quieted in their favor.

*Evidence at Trial.*

During litigation, the Nelsons commissioned a survey from Thomas Tremel, the county surveyor for Platte County. Tremel researched the original 1860s government plat of the southwest corner of Section 7. Tremel noted that because this is a "short quarter" containing less than the ordinary 160 acres, the original plat had been subdivided into three parts: an eastern tract containing 80 acres and two western lots containing approximately 34 acres each. The 34 acre lots are labeled "lot 3" and "lot 4" on the government plat.

Tremel testified that in his experience, it is common for those transferring land to refer to government lots as "quarters of quarters" rather than their lot numbers. For this reason, Tremel interpreted the deeds conveying the SW 1/4 of the SW 1/4 and the NW 1/4 of the SW 1/4 to the Rasmussens to mean that lot 3 and lot 4 from the original plat were conveyed to the Rasmussens. With this interpretation, Tremel prepared a survey, exhibit 15, depicting the boundary line as asserted by the Nelsons and filed it with the register of deeds. Tremel testified at trial that in his opinion, exhibit 15 is the true and accurate survey of the property at issue. At the request of the

Rasmussens, Tremel also prepared a survey that depicts the boundary line as dividing the southwest quarter of section 7 into two equal halves, as asserted by the Rasmussens. The survey depicting the boundary as asserted by the Rasmussens is in evidence as exhibit 20.

At trial, the Nelsons submitted tax receipts showing that the Rasmussens began paying taxes on 34 acres following the 2001 sale and 68 acres following the 2006 sale The Nelsons have been paying taxes on 80 acres since the 2006 sale.

The Rasmussens maintain that the original government plat does not yield a correct interpretation of the deeds because the deeds do not refer to the government lot numbers contained on the plat and the parties did not have knowledge of the plat at the time of the sale. David testified that he did not have any knowledge of the original government plat depicting lots 3 and 4 at the time of either land sale. Similarly, Fowlkes, the real estate agent for Douglas, testified that he had no knowledge of the government plat or lots 3 or 4 at the time of either land sale. Fowlkes testified that in his experience and knowledge of the real estate business, a sale of 1/4 of a quarter refers to one fourth of the total area contained in that quarter. Fowlkes stated that his understanding during the sale was that Rasmussen would receive one fourth of the area contained by the southwest quarter of section 7. Douglas did not testify at trial and filed an answer stating that he took no position on the boundary dispute. At a deposition before trial, Douglas stated that he did not know what his intent was at the time of the sale.

Following trial, the district court found in favor of the Rasmussens and ordered that the boundary be ascertained according to the survey in evidence as exhibit 20. Accordingly, it found against the Nelsons on the counterclaim. This appeal follows.

## ASSIGNMENTS OF ERROR

The Nelsons assign on appeal that the district court erred in (1) changing the boundary line dividing the west 1/2 and the east 1/2 of the southwest quarter of Section 7 from the lines in the original government plat, (2) holding that the presumption of the survey submitted as exhibit 15 was rebutted by the intention of the parties, (3) using parol evidence to modify the terms of the purchase agreement and deeds, (4) modifying the deeds of the properties, (5) finding that the parties mutually recognized and acquiesced in the boundary, and (6) finding that the Rasmussens' claim was not barred by the statute of limitations.

## STANDARD OF REVIEW

An action to ascertain and permanently establish corners and boundaries of land under Neb. Rev. Stat. § 34-301 (Cum. Supp. 2014) is an equity action. See *Anderson v. Cumpston*, 258 Neb. 891, 606 N.W.2d 817 (2000). In an appeal from an equity action, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court, provided that where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id.*

The construction of a contract is a question of law, and is reviewed de novo. *Labenz v. Labenz*, 291 Neb. 455, 866 N.W.2d 88 (2015).

Which statute of limitations applies is a question of law. *First Nat. Bank of Omaha v. Davey*, 285 Neb. 835, 830 N.W.2d 63 (2013). When reviewing questions of law, an appellate court

has an obligation to resolve the questions independently of the conclusion reached by the trial court. *Id.*

The point at which a statute of limitations begins to run must be determined from the facts of each case, and the decision of the district court on the issue of the statute of limitations normally will not be set aside by an appellate court unless clearly wrong. *Teater v. State,* 252 Neb. 20, 559 N.W.2d 758 (1997).

ANALYSIS

*Ascertaining Boundary Line.*

The Nelsons' first four assignments of error relate to the district court's determination of the boundary line between the east and west halves of the southwest quarter of section 7. Ascertaining the boundary line in this case rests upon interpretation of the 2001 and 2006 purchase agreement and related deeds. In order to fully address each of the assigned errors, we must first consider the overarching question of whether the district court erred in its interpretation of the purchase agreement.

The interpretation of a contract and whether the contract is ambiguous are questions of law. *Timberlake v. Douglas Cty.*, 291 Neb. 387, 865 N.W.2d 788 (2015). Both parties assert that the contracts at issue are unambiguous, but assign different interpretations to the contracts' respective references to the "SW 1/4" and "NW 1/4" of the southwest quarter of Section 7. However, the fact that parties to a document have or suggest opposing interpretations of the document does not necessarily, or by itself, compel the conclusion that the document is ambiguous. *Callahan v. Washington Nat. Ins. Co.*, 259 Neb. 145, 608 N.W.2d 592 (2000). A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. *Id.*

After reviewing the 2001 purchase agreement and the deed connected to the 2006 purchase agreement, we agree with the parties that the contracts are unambiguous. An unambiguous contract is not subject to interpretation or construction, and in such a contract, the intention of the parties must be determined from its contents alone. *Gibbons Ranches, L.L.C. v. Bailey*, 289 Neb. 949, 857 N.W.2d 808 (2015). This determination is made by viewing the contract as a whole. See *Gridiron Mgmt. Grp., LLC v. Travelers Indem. Co.*, 286 Neb. 901, 839 N.W.2d 324 (2013). When the terms of a contract are clear, a court may not resort to rules of construction, and the terms are to be accorded their plain and ordinary meaning as an ordinary or reasonable person would understand them. *Gibbons Ranches, L.L.C. v. Bailey*, *supra*.

The entire legal description of the land in the 2001 purchase agreement reads that the land being sold is "[t]he SW 1/4 of the SW 1/4 of Section 7, Township 20 North Range 4 West of the 6th P.M. Platte County, NE." The description makes no reference to a plat or survey, nor is the plat referenced anywhere else in the purchase agreement. There is no disagreement between the parties that "the SW 1/4 of Section 7, Township 20 North Range 4 West of the 6th P.M. Platte County, NE" refers to the entire quadrant of section 7 owned by Douglas at the time of the sale. The only dispute at issue is the proper interpretation of "the SW 1/4" of that land. A "quarter" is "one of four equal parts into which something is divisible" or "any of various units of length or area equal to one fourth of some larger unit." Merriam-Webster, "Quarter," *Merriam-Webster.com*, 21 March 2016. Looking only at the language of the contract and giving

- 5 -

the terms their plain and ordinary meanings, *Gibbons Ranches, L.L.C. v. Bailey*, *supra*, we agree with the Rasmussens that the plain and ordinary meaning of "the SW 1/4" is the southwestern-most one-fourth of the area of the southwest quarter of Section 7. Accordingly, we also find that the ordinary meaning of the language in the 2006 deed conveys one quarter of the land by area.

The Nelsons assert that the "NW 1/4" should be understood as a reference to "government lot 3" and "SW 1/4" a reference to "government lot 4" as depicted in the 1890s government plat. However, neither the purchase agreement nor the deeds reference the government plat. While a court can consider multiple documents that make up a single transaction, a court may not consider extrinsic evidence to vary the terms of an unambiguous contract. See *McDonald's Corp. v. Goler*, 251 Neb. 934, 560 N.W.2d 458 (1997) and *Nowak v. Burke Energy Corp.*, 227 Neb. 463, 418 N.W.2d 236 (1988). Because neither the purchase agreement nor the deeds reference the government plat we cannot glean from them that the parties intended the plat to control what land was to be conveyed. We therefore reject the Nelsons' argument that the plain and unambiguous language should be understood as a reference to the plat.

Although our interpretation of the purchase agreement and deeds above stands alone, the evidence admitted at trial of the parties' interpretation of the contract also supports our finding. The interpretation given to a contract by the parties themselves while engaged in the performance of it is one of the best indications of true intent and should be given great, if not controlling, influence. *Nowak v. Burke Energy Corp.*, 227 Neb. 463, 418 N.W.2d 236 (1988). The parol evidence rule does not prohibit evidence regarding the interpretation given contracts by the parties themselves. *Id.*

Evidence at trial established that after purchasing the land, the Rasmussens placed a red flag near the east-west midpoint of the southwest quarter of section 7 using a measuring wheel. Douglas acknowledged the flag and agreed with the placement of that boundary. This is evidence that the parties understood the two sales to have conveyed two quarters of the land by area. Additionally, Douglas stated at a deposition that he had always believed that a well, which the Rasmussens drilled near the center of the southwest quarter of section 7, sat on their property. Although both surveys in evidence appear to place the well on the Nelsons' property, Douglas's assumption is evidence that he understood the conveyances to have created a boundary line at the center of the land because of its proximity to the midpoint of the quarter. Additionally, David testified that he certified 76 acres of land being farmed to the ASC. This suggests that even accounting for the fact that this was a short quarter, the Rasmussens understood that they owned half of the area.

While the division of tax payments between the parties could be considered as evidence of the parties' interpretation of the contracts, we find this evidence less persuasive than the boundary flag and other evidence of performance discussed above. Although the Rasmussens paid taxes on only 64 acres of land and the Nelsons paid taxes on 80 acres, David testified that he did not pay attention to the acreage listed on the property tax bills or know on how many acres he was paying taxes. This assertion is supported by the Rasmussens' 2001 real estate transfer statement to the county assessor for tax purposes which listed that 40 acres had been conveyed in the initial sale. Although the Rasmussens were subsequently taxed on only 34 acres of land following the 2001 sale, the conflict between the real estate transfer statement and the taxes assessed suggests that the

tax bills are not strong evidence of the understanding of the parties at the time of the purchase agreement.

For the foregoing reasons, we agree with the district court that the purchase agreement and deeds collectively convey half of the area of the southwest quarter of section 7 by area. Having discussed this underlying contractual interpretation matter, we turn to the Nelsons' specific assignments of error and discuss whether any of these arguments alter the proper determination of the boundary line.

*Conformity With Government Plat.*

The Nelsons assign that the district court erred when it changed the boundary line between the east and west halves of the southwest quarter of section 7 from those established by the government plat, and the survey offered as exhibit 15.

The Nelsons cite the Nebraska Rules and Regulations for Land Surveyors contained in Neb. Rev. Stat. § 23-1908 (Cum. Supp. 2015) for the proposition that a survey of the land must reflect the boundaries established in the government plat. However, they offer no authority that this statute prevents a private party from conveying a piece of land with a boundary other than that established in the government plat. Indeed, we note that in *Sila v. Saunders*, 274 Neb. 809, 743 N.W.2d 641 (2008), the Nebraska Supreme Court approved the ability of private parties to acquiesce to a boundary line that differed from the original government plat. Although that case is distinct in that it deals with acquiescence and not the sale of land, it suggests that private parties do have the power to change the boundary lines of their land from that recorded in governmental surveys.

Additionally, as we discuss above, the government plat was not referenced by the purchase agreement or deeds at issue in this case, and no survey was ordered in connection with the sales. At trial, counsel for the Rasmussens objected to the plat as parol evidence, and to Tremel's testimony as speculative and lacking foundation. Given the rule against extrinsic evidence in interpretation of the contract, it would not have been proper for the court to interpret the parties' intent in the purchase agreement or deeds with reference to the plat since it was not referenced in any of the written documents. The Rasmussens did not cross-appeal or assign that the admission of the plat and Tremel's testimony at trial were in error. However, even if we were to consider this evidence, we do not find it probative in determining the parties' intent and therefore it was not error for the trial court to affix the boundary line in a place other than depicted by the plat.

Tremel opines that government lots 3 and 4 as depicted on the government plat could also be described as the NW 1/4 and SW 1/4 of the southwest quarter of section 7, but we find no evidence that these legal descriptions were ever actually mapped together prior to the survey that Tremel produced for the Nelsons in conjunction with the litigation of this case. Tremel testified that while it is his opinion based upon his experience that government lots are commonly referred to with terms such as "northwest quarter" or "southwest quarter", nothing in the labeling of the government survey or deeds connect the legal descriptions of government lots 3 and 4 to the terms "northwest 1/4" and "southwest 1/4" in this case. Therefore, we find no reason why Douglas and the Rasmussens were obligated to structure their sale contracts in accordance with the government plat, nor any evidence that they actually intended to do so. Accordingly, we find no error by the

trial court in affixing the boundary differently than did the governmental plat. This assignment of error is without merit.

*Survey Presumption.*

The Nelsons next assign that the district court erred in finding that the evidence at trial overcame the presumption that the survey submitted as exhibit 15 was correct. The trial court accepted that under Neb. Rev. Stat. § 81-8,122.01 (Reissue 2014), the filed survey entered as exhibit 15 was presumptive evidence of the facts contained therein. However, the trial court found that the evidence offered at trial on the intent of the parties rebutted this presumption.

We do not disagree that under § 81-8,122.01, the survey offered as exhibit 15 is presumptive evidence of the facts it contains. For the reasons discussed above, however, upon our de novo review we find that evidence of the parties' intent as demonstrated by the contents of the purchase agreement rebuts the survey in evidence as exhibit 15. Accordingly, this assignment of error is without merit.

*Modification of Deeds.*

The Nelsons next assign that the district court erred in modifying the deeds because there was no evidence of fraud or mistake. We disagree with the Nelsons' characterization of the district court's order as reforming the deeds. The district court's order instead interprets that the language in the deeds conveying the "SW 1/4" and "NW 1/4" each convey one quarter of the area by acreage. The court describes the land owned by the parties at the time of trial as the east 1/2 and the west 1/2 of the southwest quarter of section 7. This is not a modification of the deeds.

We note that the survey contained in exhibit 20 could create confusion on this point. Although exhibit 20 fixes the boundary line at the geographical midpoint of the southwest quarter of section 7, it contains language taken from the exhibit 15 survey describing the "NW 1/4 SW 1/4" to be also known as "Lot 3" and the "SW 1/4 SW 1/4" to be also known as "Lot 4." However, the district court's order should not be read to embrace these descriptions. It references the survey only as a precise description of where the boundary between the parties' land should be affixed. Referring to a survey depicting a boundary line is proper to conform with the requirement that a court exactly describe where a boundary line is fixed by its judgment. See *Inserra v. Violi*, 267 Neb. 991, 679 N.W.2d 230 (2004). Therefore, nothing in the district court's order should be read to modify the deeds in this case and this assignment of error is without merit.

*Use of Parol Evidence to Modify Purchase Agreement and Deeds.*

The Nelsons next assign that the district court erred in relying on parol evidence to modify the purchase agreement and deeds. For the reasons discussed above, we disagree with the characterization that the district court's order modifies the purchase agreement or deeds. However, we consider the assignment that the district court erred in relying on parol evidence in interpreting the purchase agreement.

When a contract is unambiguous, the intentions of the parties must be determined from the contract itself. *In re Claims Against Pierce Elevator*, 291 Neb. 798, 868 N.W.2d 781 (2015). The parol evidence rule renders ineffective proof of a prior or contemporaneous oral agreement that alters, varies, or contradicts the terms of a written agreement. *Id.*

We agree with the Nelsons that the district court's order refers in part to impermissible parol evidence in its interpretation the purchase agreement. In particular, the district court refers to the advertisement for the sale of 40 acres and David's method of calculating a purchase price prior to buying the land. These are both examples of prior negotiations or agreements that are prohibited by the parol evidence rule. See *In re Claims Against Pierce Elevator, supra.* It is only when a contract is ambiguous that a court may consider the facts and circumstances leading up to the contract's execution. See *Nebraska Depository Inst. Guar. Corp., v. Stastny*, 243 Neb. 36, 497 N.W.2d 657 (1993). Therefore, the court erroneously relied upon this testimony to determine the parties' intent.

However, we find this error to be harmless. The construction of a contract is a question of law, and is reviewed de novo. *Labenz v. Labenz*, 291 Neb. 455, 866 N.W.2d 88 (2015). On our de novo review as discussed above, we agree with the district court's interpretation of the purchase agreement without reference to parol evidence. Accordingly, the district court's error in considering parol evidence is harmless and does not require reversal. *Schuller v. Schuller*, 191 Neb. 266, 214 N.W.2d 617 (1974) ("upon a trial de novo in this court, incompetent, irrelevant, and immaterial evidence offered in the original trial, which was admitted over proper objection by the adverse party, will be disregarded by this court").

*Acquiescence.*

The Nelsons next assign that the district court erred in finding that the parties mutually acquiesced to the boundary line because they had not acquiesced for the statutory time period of 10 years. While § 34-301 allows for a boundary line to be fixed via mutual acquiesce for the statutory period of 10 years, the district court's order is not based on this provision of § 34-301. Instead, the district court interpreted the purchase agreement and deeds to create two tracts of equal area with a boundary line as that depicted in the survey in exhibit 20. The district court refers to the parties' acquiescence to a midpoint boundary only as evidence of their intent at the time of the conveyances. Because the district court did not determine the boundary on the basis of acquiescence for the statutory period under § 34-301, this assignment is without merit.

*Statute of Limitations.*

The Nelsons finally assign that the district court erred in finding that the statute of limitations did not bar the Rasmussens' action. We must first determine which statute of limitations applies to this action, a question of law to be decided by an appellate court independently. *First Nat. Bank of Omaha v. Davey*, 285 Neb. 835, 830 N.W.2d 63 (2013). While the Nelsons assert that the 4-year statute of limitations for fraud or mistake should apply to this action, we disagree. Neither of the parties assert that a mistake in the conveyance of the land occurred; rather, they assert a boundary dispute has arisen. Accordingly, we do not find the fraud or mistake statute of limitations to be applicable. Instead, we hold that this boundary dispute action is governed by the general 10-year limitations period for actions for the recovery of title or possession of real estate under Neb. Rev. Stat. § 25-202 (Reissue 2008).

Having determined the applicable statute of limitations, we turn to the time at which a statute of limitations began to run. This is a question of fact for the trier of fact and will not be

disturbed on appeal unless it is clearly wrong. *Teater v. State,* 252 Neb. 20, 559 N.W.2d 758 (1997). The trial court found as follows:

> The evidence shows there was no boundary dispute until Douglas conveyed the east half of the SW1/4 to Kenneth and Patricia by deed dated September 26, 2011. It was at this time Kenneth and Patricia made it clear to the plaintiffs the boundary separating the west half from the east half of the SW1/4 was in dispute. Because this action was filed by the plaintiffs on June 14, 2012, less than one year after they became aware of the boundary dispute.

Following our review of the record, we agree with the findings of the trial court on this issue. Accordingly, this assignment of error is without merit.

CONCLUSION

After a de novo review of the record, we find that the plain language of the purchase agreement and deeds at issue collectively convey the western half of the southwest quarter of section 7 by area. While we agree with the appellants that the district court erred in considering parol evidence in interpreting the unambiguous contractual language, this error is harmless because we reach the same result on de novo review without reference to parol evidence. We find no error by the trial court on the appellants' remaining assignments of error and accordingly we affirm.

AFFIRMED.